UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JASON PIETRZYCKI, | ) | CASE NO.: 1:14-CV-06546 |
| | ) | |
| Plaintiff, | ) | HONORABLE JEFFREY T. GILBERT |
| | ) | |
| vs. | ) | **DEFENDANTS' MEMORANDUM OF** |
| | ) | **LAW IN SUPPORT OF THEIR MOTION** |
| HEIGHTS TOWER SERVICE, INC., et | ) | **FOR SUMMARY JUDGMENT** |
| al., | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Heights Towers Service, Inc. ("HTS") and Mark Motter ("Motter") (hereinafter collectively "Defendants,") respectfully submit the following Memorandum of Law in support of their Motion for Summary Judgment against Plaintiff and all others similarly situated.

## INTRODUCTION

Defendants seek Summary Judgement in their behalf as to all claims and causes of action of Plaintiff and the previously-certified Class and Collective. When granted, this Motion will resolve all issues in this case, including all issues of liability, damages, fees, costs or otherwise.

Notwithstanding Plaintiff's claims and causes of action, Defendants have never violated either the Fair Labor Standards Act ("FLSA,") 29 U.S.C. § 201 *et. seq.* nor have they ever violated the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105\1 *et. seq.* At all times, Defendants have properly compensated Plaintiff and all others similarly situated their rightfully earned wages. Contrary to Plaintiffs' contentions, the benefit paid for Drive Time is not conferred as wages. Any activity for which Drive Time was paid is not an activity integral and indispensable to the principal activities of Defendants. The act of riding in a company vehicle is not an intrinsic element of any principal activities of Defendants. Nor is riding in a vehicle an activity with which Plaintiff or

those similarly situated cannot dispense in order to perform Plaintiff's principal activities. Riding as a passenger in an HTS company vehicle is not a condition of employment and is only conferred as a benefit upon Plaintiff and others similarly situated. Riding to and from a job site can be and often is accomplished by Plaintiff and all others similarly situated by driving their own personal vehicle.

Plaintiff and those similarly situated are always properly paid for any and all work actually performed (and which work is integral and indispensable) and Defendant HTS always properly records such hours for purposes of computing any overtime obligation.

While identifying Drive Time and providing limited remuneration for the hours spent as a passenger, there is no uniformity, at all, in how Drive Time is calculated and/or recorded by HTS' various Foremen, each of whom is separately responsible for maintaining the HTS Daily Activity Reports on which Drive Time and actual work activities are recorded. Absent any uniformity in this respect, there is not any custom and practice exposing Defendants to any liability. Also, there is no written policy regarding compensation for and the calculation of Drive Time. Defendants properly exclude Drive Time Hours from any overtime calculation and do not, as a matter of law, need to consider Drive Time Hours when determining the total number of hours worked in any given week.

Plaintiffs have failed to carry their burden relative to the possible imposition of any liability upon Defendant Motter, individually.

## **LEGAL STANDARD**

Summary Judgment is proper when the record shows there is no genuine dispute as to any material fact and the moving Party (Defendants herein) is entitled to Judgment in its (their) favor as a matter of law. Fed.R.Civ.P. 56 (a); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). A genuine

issue of material facts exists when, in viewing the record in its entirety and drawing all reasonable inferences therefrom in a light most favorable to the non-moving Party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## SUMMARY OF UNDISPUTED FACTS

HTS is Plaintiff's former "employer," as defined by the Fair Labor Standards Act, "FLSA," 29 USC § 203(d) and the Illinois Minimum Wage Law ("IMWL,") 2. Defendant Motter is among those involved in setting the compensation rates for HTS' various employees as well as the HTS Drive Time rate. (Defs'. SOF, ¶¶1, 2).

HTS is in the business of servicing cellular communication towers.  HTS titles certain of its employees "Tower Technicians," and others "Foremen". The title "Warehouse Manager," is also used.  HTS Tower Technicians and Foremen do, on occasion, travel in HTS company owned vehicles to those locations where HTS' own customers' cellular communications towers are located. Once at these locations, they perform such functions as tower and related equipment upgrade, maintenance and installation. (Defs.' SOF, ¶3).

.	HTS Tower Technicians and Foremen often voluntarily travel and commute together, to and from HTS customer job sites, in a four-person crew. In these situations, one person drives the HTS company owned vehicle while the remaining three members ride as passengers. Quite often, individuals within any work crew will elect to voluntarily drive their personal vehicles to and from HTS customer job sites. (Defs.' SOF ¶5).

.	HTS Tower Technicians and HTS Foremen are paid for "Drive Time." Drive Time is that time which a Tower Technician or Foremen spends simply riding as a passenger in an HTS company vehicle. Drive Time is paid at a rate of $10 per hour.  Drive Time is not compensation for work or services actually performed on behalf of HTS.  Rather, Drive Time is paid to HTS

3

Tower Technicians and Foremen for the period of time they are simply sitting in a company vehicle while riding as a passenger to or from an HTS customer's job site location. Drive Time is not a wage paid for hours in service to the employer. If an HTS employee elects to drive his or her own personal vehicle to an HTS customer job site, the employee does not receive Drive Time compensation. HTS hourly employees/Tower Technicians are not required to ride in HTS company vehicles either to or from an HTS job site. Doing so confers a benefit only upon the employee. (Defs.' SOF, ¶¶7 - 9).

It is the responsibility of HTS Foremen to complete Daily Activity Reports. No single Foreman has ever been provided specific instructions as to how Drive Time is to be recorded. There is no consistency as to how HTS' Foremen record Drive Time as opposed to regular time. While providing Drive Time allows HTS to remain competitive, employees are not incentivized to work for HTS because of the HTS Drive Time benefit. (Defs.' SOF, ¶¶10 - 12).

HTS compensates both Tower Technicians and Foremen at a regular wage for time spent driving, rather than riding as a passenger in, an HTS-owned company vehicle. This compensation at a regular rate is based upon the fact the activity of driving is actually in furtherance of HTS' need to have company-owned vehicles taken to job sites and then returned to the HTS Illinois facility at the end of any week for the purpose of work actually to be performed in the *following* week. On very rare occasions, yet not at the direction of HTS Foremen, do any HTS Tower Technicians perform any actual work at the Yorkville, IL facility at the direction of Foremen prior to entering the HTS company vehicle and riding, as a passenger, to a customer's job site or to a customer's warehouse. Likewise, it is a very rare occasion that any HTS employee performs any work at the direction or insistence of HTS management in furtherance of either HTS' or its customer's business, at a customer's warehouse. Equally rarely do those HTS' employees, who are

not driving the HTS company vehicle, ever perform any work at all upon a return trip to the HTS location in Yorkville, IL.  Most often the only activity is sleeping. It is understood, by both Tower Technicians and Foremen, that during any period of time they are voluntarily riding as a passenger in an HTS company vehicle and not performing any tasks are not recorded as hours worked or hours paid at a regular wage rate because the activity of sleeping (or for that matter no activity at all) is not necessary to further any goal or task of HTS.  (Defs.' SOF, ¶¶14 - 16).

There is no custom and/or practice of paying or differentiating between wages paid for Regular Time and Drive Time. The two types of payments (i.e., Regular Wage Rate and Drive Time) are not uniformly recorded by the HTS Foreman whose responsibility it is to record Regular Hours and Drive Time Hours. (Defs.' SOF, ¶17).

Any and all activities performed by any Foremen or Tower Technician are either preliminary or postliminary activities.  While the Daily Activity Report also shows the work performed by the crew, not all Foremen follow a particular custom, pattern, or practice and each records time as he or she might see fit. There is no uniformity constituting a custom or practice in this respect.  (Defs.' SOF, ¶¶19, 20).

While the HTS Daily Activity Reports provide columns for identifying "Start Time," and "End Time," these do not reference times which coincide with the hours (i.e. 40 hours) within a regular work week.  Rather, these identifiers simply indicate the time HTS crew members who have elected to ride in an HTS company owned vehicle as opposed to driving their personal vehicle, usually arrive at the Company's Yorkville, IL facility for the purpose of leaving to a customer's job site, regardless of the distance to be traveled.  (Defs.' SOF, ¶21).

In computing the number of overtime hours for the payment of wages, Defendant HTS does not include Drive Time hours. This is because no work in furtherance of the employer's

business is being conducted while employees are doing such things as sleeping in the HTS truck. (Defs.' SOF, ¶22).

Plaintiffs have failed to establish that, as a matter of law or fact, there is any basis for the imposition of personal liability upon Defendant Motter. (Defs.' SOF, ¶30)

## ARGUMENT

Plaintiffs' claims and causes of action notwithstanding, Defendants have not violated any provision of the FLSA or the IMWL. First, any remuneration paid for Drive Time is not a wage paid for the purpose of any work activity integral and indispensable to Plaintiff's own work or Defendants' business. Second, Drive Time need not be included in determining the total number hours worked for purposes of determining overtime, as a matter of law. Moreover, there is no clear, custom or practice of compensating employees for Drive Time.

## I. RIDING IN AN HTS COMPANY VEHICLE IS NOT REQUIRED

Plaintiff (and those similarly situated) can point to no evidence that riding in an HTS company owned vehicle, either to or from an HTS customer job site, is a requirement for continued employment. This is because there is no such requirement. (Defs.' SOF, ¶¶5, 21). Rather, the only obligation imposed upon any HTS Tower Technician is this; in the event he/she takes advantage of the option and voluntarily elects to ride from the HTS Yorkville, IL facility to an HTS customer's job site in the HTS company truck, then he/she is to report to Yorkville, IL, timely. (Defs.' SOF, ¶21). Regardless, there is no benefit to HTS because all HTS Tower Technicians are to report to HTS customers' job sites, whether they use their personal vehicles for transit or elect, voluntarily, to ride as a passenger in an HTS company truck. There is no evidence that HTS, as the employer, exercised any control over the means of transportation to/from any job site(s). HTS

employees are free to travel to an HTS customer job site however they choose. (Defs.' SOF, ¶¶5, 21).

While HTS Foremen do typically drive the HTS company owned vehicle, this activity is compensated at a regular wage rate … including a calculation for overtime. In the event an HTS Tower Technician drives the HTS vehicle, he/she will also be paid a regular hourly wage rate for that activity and his/her time will be considered toward a proper overtime analysis. (Defs.' SOF, ¶¶7, 14).

The legal propriety of the practice identified above (and buttressed by the evidence in this matter) was previously confirmed by the Illinois Supreme Court in *Pub. Serv's. Comm., et al. v. Indus. Comm'n., et al.*, 370 Ill. 334 (Ill. 1938). The activity is not compensable as work unless the activity of driving (or riding) within an employer's vehicle is required by the employer or unless, while in the vehicle, the employee is performing some even incidental activity for the employer "under his (the employee's) contract of employment". *Id*. at 335. In the matter now before the court, while there is self-serving testimony of Plaintiff that he did on occasion, as a passenger in an HTS vehicle, perform some incidental tasks, there is simply no evidence that the performance of such tasks as described by Plaintiff are required by HTS as a condition of Plaintiff's employment with HTS. (Defs.' SOF, ¶¶9, 15, 16, 19). The transportation provided by HTS is for the benefit of its employees rather than for the benefit of HTS. (Defs.' SOF, ¶¶5, 21). See also *Stevenson Olds Sales and Serv. V. Indus. Comm'n.., et al*., 140 Ill.App.3d 703, 705 (Ill.App.3d Dist. 1986).

## II.     DRIVE TIME IS NOT A WAGE

Drive Time remuneration paid to Plaintiff or others similarly situated is an optional benefit provided to Plaintiff and those similarly situated. The actual practices regarding the recording and payment of Drive Time are subject to the individual discretion and judgement of each crew's

Foremen (Defs.' SOF, ¶¶10, 11, 17, 20). (See also Pietrzycki Depo p. 117). The experiences of HTS Foremen and Tower Technicians, relative to the recording and payment of Drive Time, varies greatly for each weekly assignment depending not only upon the assigned Foremen's individual discretion and practice, but also upon whether Plaintiff and others similarly situated voluntarily choose to ride in HTS vehicles for transportation, choose instead to drive their own personal vehicle to a customer's job site, perform actual work in an HTS truck during any travel to a job site and/or are serving as the driver of an HTS truck. (Defs.' SOF, ¶¶7, 8, 9, 10, 11, 15, 16, 17, 20, 21).

Defendants have a legitimate legal defense, supported by the undisputed and material facts, rendering the Drive Time incidental activities associated with using a company vehicle non-compensable. See Employee Commuting Flexibility Act ("ECFA"), 29 U.S.C. § 254 (a). Simply stated, Plaintiff and those similarly situated have failed to allege or prove that Defendants are required by law to actually provide any Drive Time wage compensation to Plaintiff or to others similarly situated, for any work which is performed during a drive to a customer's job site. Plaintiffs theory largely rests upon an advocated application of the "custom and practice," exception to the Portal-to-Portal Act, which – in limited instances – creates liability for an employer for activities that are otherwise non-compensable. See 29 U.S.C. § 254 (b) 2. However, the "custom and practice," exception is inapplicable in the matter now before the Court. What clearly is simply a general employment policy is not legally sufficient to establish a legally binding obligation to compensate for time which is otherwise non-compensable. *Brand v. Comcast Corp.,* 12 CV 1122, 2015 WL 5693659, at *14 (N.D. ILL. Sept. 28, 2015). Moreover, the Employee Commute Flexibility Act ("ECFA"), which amends the Portal-to-Portal Act "custom and practice" exception, provides as follows:

> For purposes of this subsection *the use of an employer's vehicle for travel by an employee* and activities performed by an employee which are incidental to the use of such a vehicle for commuting *shall not be considered part of the employee's principal activities* if the use of such a vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee….

29 U.S.C. § 254 (a). (Emphasis added).

As the undisputed material facts establish, the use of HTS' company vehicles for commuting always occurs within the normal commuting area of Defendants' business. (Defs.' SOF, ¶¶5, 6). Admittedly, HTS' business is geographically wide and far reaching (to include distances west to South Dakota, east to Pennsylvania, north to Wisconsin and south to Tennessee). Regardless, the expansiveness of the commuting territory is not germane to this Court's analysis and application of the ECFA's exception to the Portal-to-Portal "custom and practice" rule. There is no evidence other than to support a conclusion that the normal commuting area for Plaintiffs and all others similarly situated included any HTS customer job site to which these individuals might be dispatched to perform work, regardless of geographic location. (Defs.' SOF, ¶¶5, 6).

Consequently, under the ECFA, the voluntary use of and time spent riding in an HTS company vehicle and any "incidental," non-mandatory activities is non-compensable and need not be included within any calculation of wages or overtime. See *Chambers v. Sears Roebuck & Co.,* No. 10-20360, 428 Fed.Appx. 400, 403-04, 2011 WL 2392359, at *2 (Fifth Cir. 2011); see also *Brand v. Comcast Corp.,* No. 12 CV 1122, 2015 WL 5693659, at *14 (N.D. ILL. Sept. 28, 2015). The undisputed material facts demonstrate that the employees' voluntary ride-sharing use of an HTS vehicle is purely optional for Plaintiff and those similarly situated. (See Gomez depo, p. 34; Ex. 3, p. 42; Duncan depo p. 30, Pietrzycki depo p. 117 and Follestead depo p. 34).

9

There is absolutely no evidence that either Plaintiff or any person similarly situated is ever directed, expected or required to ride in an HTS vehicle to or from an HTS customer's job site location. The only requirement is this: in the event Plaintiff or any others elect to take advantage of the transportation benefit offered, they are to appear at HTS' Yorkville, IL facility at (usually) 7 o'clock in the morning on the Monday. Otherwise, Plaintiff and others similarly situated are free to (and often do) drive their personal vehicles to and from their own homes to an HTS' customer's job site location. (Defs.' SOF, ¶¶20, 21).

Applying the FLSA, the Supreme Court has defined compensable work as being "physical or mental exertion (whether burdensome or not) <u>controlled or required by the employer</u>, and pursued necessarily and primarily for the benefit of the employer and his business." See *Tenn. Coal, Iron & RR Co. v. Muscode Local* No. 123, 321 590, 598, 64 S. Ct. 698, 88 L. Ed. 949 (1944). (Emphasis added.) See also *IDP, Inc. v. Alvarez,* 546 U.S. 21, 25-30, 126 S.Ct. 514, 163 L. Ed. 2d 288 (2005). Simply put, not all activities of an employee are compensable. This is clearly a proposition which Plaintiff and those similarly situated wish to advance, although wrongly, as a predicate to their claims and causes of action. The activities in which Plaintiffs and those similarly situated might claim to have ever engaged are easily distinguishable from work actually performed during the employee's regularly scheduled hours. During regularly scheduled hours, Plaintiff and those similarly situated were climbing towers and maintaining cellular service components. In any other situation for which they seek to impose liability, Plaintiff and those similarly situated were merely performing voluntary and incidental tasks such as cleaning out a truck, burning trash and perhaps (on rare occasions) loading materials. (Defs.' SOF, ¶¶7, 8, 9, 15, 16, 19). These types of activities are clearly distinguishable from the actual work Plaintiff and others similarly situated

were required to perform on a regular basis. See *Manning et al. v. Boston Medical Center Corp., et al.,* 725 F.3d 34, at p. 45-46 (1st Cir. 2013).

## III. ANY ACTIVITIES DURING DRIVE TIME ARE NOT INTEGRAL OR INDISPENSABLE AND WERE OTHERWISE SIMPLY PRELIMINARY OR POSTLIMINARY.

There is no evidence that any preliminary or postliminary incidental activity of any HTS employee is required by HTS, much less integral and indispensable to the work of Plaintiffs or the activities of HTS. (Defs.' SOF, ¶¶7, 8, 9, 15, 16, 19). The Court's decision in *Ruttiv Lowjack Corp.,* 596 F 3d 1046 (9th Cir., March 2, 2010) is illuminating and dispositive. As noted by the court in *Ruttiv*, "The ECF's language states that where the use of the vehicle is subject to an agreement on the part of the employer and the employee," it is not part of the employee's principal activities and thus not compensable. *Id.* "There is no suggestion that the agreement cannot be a condition of employment. Indeed, it would appear that the most logical place to record an agreement between an employee and an employer concerning the use of an employer's vehicle is in the employee's employment contract. One would expect Congress to specify if it did not intend that the statute has such a likely result. Accordingly, we find the plain meaning of the statute does not support Ruttiv's position." *Id.* at 1052. Moreover, "the ECFA provides that activities performed by an employee <u>which are incidental to the use of such a vehicle</u> for commuting <u>should not be considered part of the employee's principal activities</u>." *Id.* at 1052. (Emphasis added.)

The voluntary use of any HTS company vehicle to and from a customer's job site is purely incidental to Plaintiffs' and HTS' principal activities Plaintiff and those similarly situated are freely permitted to, and often do, drive their personal vehicles from their own homes to a customer's job site. (Defs.' SOF, ¶¶5, 7). Plaintiff and those similarly situated have failed to show that Defendants' restrictions, if any, placed upon the use of an HTS company vehicle, amount to

additionally legally cognizable work. In fact, Plaintiff has not provided any evidence of any restrictions. *Ruttiv* at 1004. See also *Adams v. United States*, 471 F 3d, 1321 (Fed.Cir. 2007). See also *Bobo v. United States,* 136 F 3d, 1465 (Fed. Cir. 1998).

The ECFA does not require compensation for any preliminary or postliminary activities. 29 U.S.C. § 254(a)2. Plaintiffs have completely failed to establish that any of the activities they claim to have ever performed are related to his/her principal activities on behalf of HTS. See *Lindow v. United States* 738 F.2d, 1057 (9th Cir. 1984); *Dunlap v. City Elec., Inc.,* 527 F.2d, 394 (5th Cir. 1976). Any of the activities which Plaintiff and those similarly situated claim to have ever performed are clearly *de minimis* to their principal activities and thus not compensable. See *Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 692, 66 S. Ct. 1187, 90 L.Ed. 1515 (1946).

The United States Supreme Court has issued an opinion determinative of the issues predominating in the present matter. In *Integrity Staffing Solutions, Inc. v. Busk, et al.,* 574 U.S. _____ (2014), the Court determined that an activity is compensable inasmuch as it is "integral and indispensable," provided the activity is an intrinsic element of the employee's principal activities and one with which the employee cannot dispense if he/she is to perform his/her principal activities. *Busk* at Syllabus (a). Plaintiffs have failed to establish either that time voluntarily riding in an HTS company vehicle or any of the alleged trivial preliminary or postliminary activities are intrinsic elements of their principal work activities.

## IV.    LACK OF KNOWLEDGE

Facts establishing that any of the Defendants knew, with either actual or constructive knowledge, that they have been requiring Plaintiff or any person similarly situated to perform any legally compensable work without proper compensation. Defendants dispute any liability, notwithstanding Plaintiff's claims. Indeed, the evidence establishes just the opposite; in all

respects Defendants believed (and believe) that the activity of simply riding in a vehicle is not work (it is not work). Thus, Plaintiff and others need not be compensated at a regular Wage Rate, nor should the hours engaged in such activity be included for purposes of any overtime compensation assessment. (Defs.' SOF, ¶¶17, 18, 25, 30). There is no evidence whatsoever that Defendant Motter or anyone else in an HTS management/decision making capacity knew or understood that any sort of work of any type was being performed while driving was taking place. (Defs.' SOF, ¶¶17, 18, 25, 30). Thus, knowledge cannot be imputed and an integral element of Plaintiffs' claims has not been satisfied. See 29 U.S.C. § 203 (g). See also *Holzapfel v. Town of Newburgh* 145 F.3d, 516, 524 (2nd Cir. 1998). See also 29 C.F.R. § 785.11. As announced by the Court in *Yates v. Jone Nat'l. Bank,* 206 U.S. 158, 179-180, 275 S.Ct. 638, 645 (1907), "…where by law a responsibility is made to arise from the violation of a statute knowingly, proof of something more than negligence is required, that is, that the violation must in effect be intentional."

As to the allegations of Defendant Motter's claimed individual liability and notwithstanding the arguments previously addressed herein; while it is true that Defendant Motter is the sole shareholder of HTS, is also its President and sets compensation, these activities are not alone sufficient, as a matter of law, to impose individual liability. (Defs.' SOF, ¶¶2, 17, 18, 25, 30). It has been determined that Courts must guard against imposing individual liability when the only thing which has been shown (as is true, here) is some exercise of control over the work situation, generally. Rather, to carry Plaintiff's burden, the showing must be that Defendant Motter has been instrumental in causing some alleged violation. First, there was no violation. Second, while Defendant Motter may have fulfilled various corporate capacities, it is clear he fully believed, at all material times, that providing a Drive Time benefit for voluntary activities not

13

integral or indispensable to HTS' employees' task was not a violation of the FSLA or the IMWL. *Id.* at pp. 47-48.

## V. DEFENDANTS COMPLIED WITH APPLICABLE LAW.

While the FLSA requires employers to pay employees at least a specified minimum hourly wage, (29 U.S.C. § 206) and no less than one and one-half-times the regular rate of pay for hours worked in excess of 40 hours per week (29 U.S.C. § 207), this obligation has been met by Defendants. An employer is not required to compensate an employee for all of the employee's time which might be associated with work. *Kavanagh v. Grand Union Co.,* 192 F.3d 269, 272 (2nd Cir. 1999). Under the Portal-to-Portal Act (29 U.S.C. § 251 *et seq.*) the activities of traveling to and from the actual place of performance of the employer's principal activity or activities (here, any HTS customer's job site) is not compensable time. See *Burton v. Hillsborough Co. FLA,* 181 Fed. Appex. 829 (11th Cir. 2006). In this instance, there is no fact supporting a conclusion that Plaintiff (or any of those similarly situated) was ever <u>required</u> to return to the HTS facility following a week's work, prior to returning home. While this may have happened, the return to this location was purely voluntary and entirely incidental to the ride offered in an HTS truck. *Id.* See *United Trans. Union Local 1745 v. City of Albuquerque* 178 F.3d 119, 117 (10th Cir. 1999). There is no fact supporting a conclusion that Plaintiff or any others similarly situated ever is <u>required</u> to first report to the HTS Yorkville, IL facility before traveling on to a customer's job site. *Id.* Thus, the act of retrieving a company vehicle cannot be deemed a principal activity and otherwise compensable. *Id.* at 836.

It is Plaintiff and those similarly situated who bear the burden of proving they have performed actual work for which they have not been properly compensated. Plaintiffs have failed. See *Anderson,* 328 U.S. at 686-87, 66 S. Ct. 1187. See also *Baker v. Barnard Constr.,* 146 F.3d

1214, 1216 (10th Cir. 1998). Nothing in this case identifies or suggests that any preliminary or postliminary activities of Plaintiff or those similarly situated was anything other than incidental. There is no evidence to support a conclusion that riding as a passenger in an HTS company owned vehicle is mandatory, as a condition of employment. Such activities are not compensable and Plaintiffs have failed to carry their burden of proof. None of those activities for which Plaintiffs claim relief is, or ever has been, compulsory. *Bobo,* 136 F.3d at 1468. See also *Adams v. United States*, 471 F.3d 1321 (Cir. 2006).

## CONCLUSION

Plaintiffs have failed to meet their burden. Defendants have met their burden. There are no disputed genuine issues of material fact and Defendants are entitled to a judgment in their favor, as a matter of law.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Doug Holthus*

DOUG HOLTHUS (0037046)
175 South Third Street, Suite 1000
Columbus, OH 43215
(614) 228-5931
(614) 228-5934 – FAX
Email: dholthus@mrrlaw.com

*Counsel for Defendants Heights Tower Service, Inc. and Mark Motter*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2016, a copy of the foregoing *Defendants'*

*Memorandum of Law in Support of Their Motion for Summary Judgment* was filed electronically.

Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's system.

*s/Doug Holthus*
DOUG HOLTHUS  (0037046)

*Counsel for Defendants Heights Tower Service, Inc.
and Mark Motter*

HTS-16C808/Defendants' Memorandum of Law