**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JASON PIETRZYCKI, on behalf of himself** | ) | |
| **and all other plaintiffs similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 14 C 6546** |
| | ) | |
| **v.** | ) | **Jeffrey T. Gilbert** |
| | ) | **Magistrate Judge** |
| **HEIGHTS TOWER SERVICE, INC.,** | ) | |
| **and MARK MOTTER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jason Pietrzycki ("Pietrzycki"), on behalf of himself and others similarly situated, has sued Defendant Heights Tower Service, Inc. ("HTS") and Defendant Mark Motter ("Motter") (collectively, "Defendants") for allegedly underpaying some of HTS's employees for overtime in violation of the Illinois Minimum Wage Law ("the IMWL"), 820 ILL. COMP. STAT. § 105/1 *et seq.*, and the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 201 *et seq.* Second Amended Complaint, [ECF No. 74]. The Court has certified a class under Federal Rule of Civil Procedure 23 for the IMWL claim and a collective action under 29 U.S.C. § 216(b) for the FLSA claim. Memorandum Opinion and Order, [ECF No. 108]; *Pietrzycki v. Heights Tower Serv., Inc.*, 197 F. Supp. 3d 1007 (N.D. Ill. 2016). Throughout this Memorandum Opinion and Order, the Court will refer collectively to the class members and the collective action members as "Plaintiffs."

This matter is now before the Court on three motions. The parties have filed cross-motions for summary judgment. Plaintiffs' Motion for Summary Judgment ("Plaintiffs' SJ Motion"), [ECF No. 132]; Defendants' Motion for Summary Judgment ("Defendants' SJ

Motion"), [ECF No. 142]. Defendants also have filed a motion to decertify the Rule 23 class action and the FLSA collective action. Defendants' Second Amended Motion to Decertify the FLSA Collective Action and Motion to Decertify the Rule 23(a) Class Action ("Defendants' Motion to Decertify"), [ECF No. 140]. The parties have briefed these motions and the Court heard oral argument. For the reasons stated below, Plaintiffs' Motion for Summary Judgment [ECF No. 132] is denied, Defendants' Motion for Summary Judgment [ECF No. 142] is denied, and Defendants' Motion to Decertify [ECF No. 140] is denied. As the Court notes throughout this Memorandum Opinion, the record developed by the parties in discovery—or at least the record as presented in support of the parties' respective motions—is not adequate to justify granting any of the motions now before the Court.

## I. BACKGROUND

### 1. Background Facts

HTS services cellular communication towers ("towers"). Plaintiff's Statement of Undisputed Material Facts in Support of His Motion for Summary Judgment ("Plaintiffs' SoF"), [ECF No. 134], ¶ 4; Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment ("Defendants' SoF"), [ECF No. 143], ¶ 3. Motter is HTS's president and sole owner. Plaintiffs' SoF, [ECF No. 134], ¶ 2. Plaintiffs are current and former foremen and tower technicians employed by HTS and Motter. *Id.* ¶¶ 1, 2; Defendants' SoF, [ECF No. 143], ¶ 1.

Typically, HTS sends a four-person crew consisting of one foreman and three tower technicians to work on each tower. Defendants Heights Tower Service, Inc. and Mark Motter's Memorandum of Law in Support of Collective Action Decertification and in Opposition to Plaintiff's Motion for Class Certification ("Defendants' Prior Decertification Brief"), [ECF No.

94], at 8. At the tower, foremen and tower technicians install, repair, upgrade, and maintain towers and related equipment. Defendants' SoF, [ECF No. 143], ¶ 3; *Pietrzycki*, 197 F. Supp. 3d at 1012. Foremen also are responsible for assigning work, supervising tower technicians, and tracking the work performed. *Pietrzycki*, 197 F. Supp. 3d at 1012. The differences between the roles of foreman and tower technician are not material to the resolution of the motions now before the Court. To save a few words, the Court will refer to foremen and tower technicians as "employees" (or "employee," as appropriate).[1]

To record how much time employees work in a given week, HTS relies on foremen to fill out daily activity reports ("DARs") for their respective crews. Plaintiffs' SoF, [ECF No. 134], ¶ 16; Defendants' SoF, [ECF No. 143], ¶ 20. A DAR reports each crew member's start time, end time, "work hours," and "travel hours." Plaintiffs' SoF, [ECF No. 134], ¶¶ 17–19; Sample DAR, [ECF No. 134-5]. HTS then collects the information recorded in the DARs and uses it to prepare Employee Job Detail Reports, Timecard Lists, and Payroll Stubs. Plaintiffs' SoF, [ECF No. 134], ¶ 20.

HTS services towers in at least seven states, Illinois, Ohio, Wisconsin, Kentucky, Pennsylvania, Georgia, and South Dakota. Plaintiffs' SoF, [ECF No. 134], ¶ 7; Defendants' SoF, [ECF No. 143], ¶ 6. Most of HTS's business is concentrated in the first three states, which collectively accounted for 97% of its business in 2014. Plaintiffs' SoF, [ECF No. 134], ¶ 7; Defendants' SoF, [ECF No. 143], ¶ 6. HTS has warehouses in Yorkville, Illinois, and Mount Vernon, Ohio. Defendants' Prior Decertification Brief, [ECF No. 94], at 7. HTS's employees reside in Illinois, Ohio, Wisconsin, and Michigan. *Id.* at 8. To get to or from a tower on a given day, employees may have to travel a significant distance. Plaintiffs' SoF, [ECF No. 134], ¶ 10.

---

[1] HTS has employees with other titles, including Warehouse Manager. Defendants' SoF, [ECF No. 143], ¶ 3. Throughout this Memorandum Opinion, though, "employees" and "employee" refer only to foremen and tower technicians.

This case has to do with the time that employees spend traveling to and from towers. Employees' travel options can be broken into two categories. First, employees are allowed to arrange their own transportation if they want to do so. Defendants' SoF, [ECF No. 143], ¶ 5; *see also* Plaintiffs' Combined Reply in Support of Their Motion for Summary Judgment and in Response to the Defendants' Motion for Summary Judgment ("Plaintiffs' Combined Brief"), [ECF No. 147], at 3. Typically, this involves driving a personal vehicle or riding in another crew member's personal vehicle. Alternatively, HTS provides a free transportation option, allowing a crew's members to travel in an HTS-owned truck ("HTS truck") to and from their tower. *See* Plaintiffs' SoF, [ECF No. 134], ¶¶ 6, 11; Defendants' SoF, [ECF No. 143], ¶¶ 5, 7. One member of the crew, typically the foreman, drives the HTS truck and all other crew members who opt to travel in the HTS truck ride as passengers. If employees want to travel in an HTS truck, HTS requires them to meet at a designated location—normally an HTS warehouse at the start of the day—by a certain time. *See* Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defendants' Opening SJ Brief"), [ECF No. 144], at 6; Defendants' Reply in Support of Their Motion for Summary Judgment ("Defendants' SJ Reply"), [ECF No. 156], at 7 n.3. It seems that employees usually choose to travel in an HTS truck and only infrequently arrange to travel in a personal vehicle.[2] Plaintiff's SoF, [ECF No. 134], ¶ 6.

---

[2] Defendants state in their Local Rule 56.1(a) statement that "quite often" employees "elect to drive their personal vehicles to and from HTS customer job sites." Defendants' SoF, [ECF No. 143], ¶ 5. The evidence cited by Defendants does not support this statement of fact. *See* Deposition of Nicholas Brusatori, [ECF No. 143-5], at 55 ("It doesn't happen regularly."); Deposition of Christopher Fiene, [ECF No. 143-4], at 27 (stating that two members of his crew would drive personal vehicles to Fiene's house but then got in a HTS truck); Deposition of Joshua Morris, [ECF No. 143-7], at 44–45 (recognizing that it happened, but not identifying how frequently it happened). At most, Defendants have identified evidence that one employee traveled in a personal vehicle about half of the time. *See* Defendants' SoF, [ECF No. 143], ¶ 5 (citing Deposition of Allen Robinson, [ECF No. 143-9], at 55). Plaintiffs dispute Defendants' statement of material fact and, in doing so, cite evidence showing employees drove their personal vehicles rarely. Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment ("Plaintiffs' Response to Defendants' SoF"), [ECF No. 148], at 5.

In approximately 2012, HTS decided to implement the travel time compensation arrangement at issue in this case by paying $10 per hour for travel hours (the "Drive Time Rate"). *See id.* ¶¶ 8, 10; Defendants' SoF, [ECF No. 143], ¶¶ 7, 13. HTS took this step so that it could remain compensation-competitive and attract employees. Plaintiffs' SoF, [ECF No. 134], ¶ 9; Defendants' SoF, [ECF No. 143], ¶ 12. HTS and Motter intended the new arrangement to be a uniform policy applied in a consistent manner. Defendants' SJ Reply, [ECF No. 156], at 2; *see also* Defendants' Motion to Decertify, [ECF No. 140], at 14 (stating "Defendants expected one application on [sic] the Drive Time [Rate]").

Under HTS's new plan, employees should receive at least some compensation for all of the time that they spend traveling in an HTS truck. Time spent driving an HTS vehicle should be recorded as normal work hours. Defendants' Motion to Decertify, [ECF No. 140], at 12. Time spent riding as passengers normally should be recorded as travel hours. *Id.* at 9. Passengers' time should be recorded as normal work hours, though, if the passengers perform work in the truck while traveling. Defendants Heights Tower Service, Inc. and Mark Motter's Reply in Support of Their Second Motion to Decertify the FLSA Collective Action and Motion to Decertify the Rule 23(a) Class Action ("Defendants' Decertification Reply"), [ECF No. 152], at 3–4, 9. Passengers' time also should be recorded as normal work hours if they perform what Defendants call "substantial" work before getting in the truck at the start of the day or after exiting it at the end of the day. *Id.* Even under this new compensation arrangement, the time that employees spend traveling in personal vehicles—regardless of whether the employees drive or ride as passengers—should not be recorded as either work hours or travel hours. Defendants' Motion to Decertify, [ECF No. 140], at 9; *see also id.* at 12.

The parties dispute whether HTS consistently paid the Drive Time Rate in accordance with this plan. Plaintiffs say HTS largely followed it except that HTS also usually recorded the time spent traveling in personal vehicles as travel hours. Defendants, however, claim foremen distorted HTS's intended policy by recording "travel hours" on DARs in a haphazard and inconsistent manner. The Court will address this dispute—including whether it presents a genuine issue of material fact within the meaning of Federal Rule of Civil Procedure 56—later in this Memorandum Opinion.

The parties agree that HTS treated all time that it recorded as travel hours and paid at the Drive Time Rate in a consistent manner when calculating how much overtime compensation to pay employees. When determining how many hours employees worked in a given week, HTS excluded all time that was recorded as travel hours and paid at the Drive Time Rate. Plaintiffs' SoF, [ECF No. 134], ¶ 21; Defendants' SoF, [ECF No. 143], ¶¶ 22, 24. When calculating the overtime rate of pay for employees, HTS excluded all payments at the Drive Time Rate of $10 per hour, and just multiplied employees' regular wages by 1.5. Plaintiffs' SoF, [ECF No. 134], ¶ 23; Defendants' SoF, [ECF No. 143], ¶ 23. It is these two overtime compensation practices that are at issue in this lawsuit.

## 2. Procedural History

On August 25, 2014, Pietrzycki filed the original complaint in this case on behalf of himself and similarly situated persons. Collective Action Complaint, [ECF No. 1]. A little less than one year later, Pietrzycki filed the Second Amended Complaint, which is the extant complaint at the present time. Second Amended Complaint, [ECF No. 74]. The Second Amended Complaint asserts two counts. Count I is brought under the FLSA and Count II under the IMWL. Both counts allege Defendants underpaid Plaintiffs for their overtime work.

Plaintiffs now have refined their case to two claims, which are identical under the two statutes. Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment ("Plaintiffs' Opening SJ Brief"), [ECF No. 133], at 1–2; *Pietrzycki*, 197 F. Supp. 3d at 1017. First, Plaintiffs claim HTS should have counted Drive Time as "hours worked" for the purposes of determining how many overtime hours Plaintiffs worked. Second, Plaintiffs claim HTS should have included the amounts paid at the Drive Time Rate when determining each Plaintiff's regular rate.

On April 1, 2015, at the joint request of the parties, the Court conditionally certified a FLSA collective action. Order Authorizing Notice to Similarly Situated Persons pursuant to 29 U.S.C. § 216(b), [ECF No. 34]. The following year, Pietrzycki moved to certify a Rule 23 class and Defendants moved to decertify the collective action. *Pietrzycki*, 197 F. Supp. 3d at 1011. Based on the parties' arguments and the record then before it, the Court certified, under Federal Rules of Civil Procedure 23(b)(2) and (3), "a class of Illinois workers under the IMWL that is comprised of 'all current and former HTS Tower Technicians and Foremen who received compensation for Drive Time as reflected in HTS's payroll records and who worked in Illinois since August 25, 2011,'" and denied the motion to decertify the collective action. *Id.* at 1026. After the Court's ruling, Defendants sought additional discovery, which they were permitted to take. Joint Status Report, [ECF No. 110]; Minute Entry Dated 8/5/16, [ECF No. 111]. This was followed by the current round of motion practice. The Court heard oral argument on the pending motions on July 31, 2017. Minute Entry Dated 7/31/17, [ECF No. 161].

## II. LEGAL STANDARD

### 1.   Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013). In deciding a motion for summary judgment, the court "review[s] the evidence in the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." *NES Rental Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party opposing the motion for summary judgment "gets the benefit of all facts that a reasonable jury might find." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314 (7th Cir. 2011). However, the opposing party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Nor can speculation be used "to manufacture a genuine issue of fact." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). The court will grant summary judgment "if no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012); *see also Northbound Group, Inc. v. Norvax, Inc.*, 5 F. Supp. 3d 956, 966–67 (N.D. Ill. 2013).

## 2.    Decertification

"Under Section 216(b) of the FLSA, employees may bring a collective action on behalf of themselves and other 'similarly situated' employees against employers who violate the Act's minimum wage or overtime provisions." *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010). A collective action under the FLSA is different from a class action certified under Federal Rule of Civil Procedure 23. *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1044 (N.D. Ill. 2003). But "the case law has largely merged the standards." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). Therefore, when

deciding whether to decertify a collective action and a class action in one lawsuit, the court treats them as a single class action and applies the Rule 23 standards. *See Dekeyser v. Tyssenkrupp Waupaca, Inc.*, 860 F.3d 918, 920 (7th Cir. 2017) (noting collective actions "are very similar to the more familiar Rule 23 class actions" and "analyz[ing] the two classes together"); *see also Sanchez v. Roka Akor Chicago LLC*, 2016 WL 74668, at *5 (N.D. Ill. Jan. 7, 2016); *Elder v. Comcast Corp.*, 2015 WL 3475968, at *5 (N.D. Ill. June 1, 2015); *Dailey v. Groupon, Inc.*, 2014 WL 4379232, at *4 (N.D. Ill. Aug. 27, 2014).

Under Federal Rule of Civil Procedure 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." FED. R. CIV. P. 23(c)(1)(C). After granting certification, the court "remains under a continuing obligation to review whether proceeding as a class action is appropriate." *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 142 (N.D. Ill. 2010) (quoting *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003)). When a party moves to decertify a class, "the party seeking class certification 'bears the burden of producing a record demonstrating the continued propriety of maintaining the class action.'" *Farmer v. DirectSat USA, LLC*, 2013 WL 2457956, at *2 (N.D. Ill. June 6, 2013) (quoting *Ellis*, 217 F.R.D. at 419); *see also Jacks v. DirectSat USA, LLC*, 2015 WL 1087897, at *1 (N.D. Ill. Mar. 10, 2015).

A party seeking class certification must prove that the class meets the four requirements of Rule 23(a) and at least one of the three alternatives provided in Rule 23(b). *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). Rule 23(a) requires numerosity, typicality, commonality, and adequacy of representation. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Only two of Rule 23(b)'s alternatives are relevant to this case. Under Rule 23(b)(2), certification is proper "when the plaintiffs' primary goal is not monetary

relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 441 (7th Cir. 2015). Under Rule 23(b)(3), certification is proper when questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members, and a class action is superior to other methods of resolving the controversy. *Messner*, 669 F.3d at 811.

### III. DISCUSSION

Plaintiffs and Defendants have filed cross-motions for summary judgment. Defendants also have filed a motion to decertify. The Court will address the motions for summary judgment and then turn to the motion to decertify.

### 1. The Parties' Cross-Motions for Summary Judgment

Both parties have moved for summary judgment. Before turning to the merits of the parties' motions, one preliminary issue must be addressed.

Plaintiffs argue the Court should strike Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment [ECF No. 143] and Defendants' Response to Plaintiff's Statement of (Allegedly) Undisputed Material Facts [ECF No. 146] because they do not comply with Local Rule 56.1. Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts with "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts." N.D. ILL. R. 56.1(a). Then, "the party opposing the motion for summary judgment is required to file and serve 'a concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting

materials relied upon.'" *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) (quoting N.D. ILL. R. 56.1(b)(3)(B)). Because Local Rule 56.1 serves an important function by organizing evidence and identifying disputed facts, the district court has the discretion to require strict compliance. *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015); *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005).

Plaintiffs criticize Defendants' Local Rule 56.1(a) and (b) statements in several ways. Plaintiffs say, among other things, that they are argumentative, contain multiple facts in each paragraph, and lack support for specific statements. In the Court's view, Defendants' statements do leave something to be desired. But most of the paragraphs in Defendants' statements are two sentences or shorter, are supported by appropriate citations, and are not filled with conjecture and legal arguments. More fundamentally, Defendants' statements are sufficient to serve the purpose of Local Rule 56.1 because they lay out for the Court Defendants' version of the material facts and the evidence upon which they rely. There is no indication that Defendants' statements were so deficient as to prejudice Plaintiffs by frustrating their ability to litigate the summary judgment motions. Therefore, the Court will not strike Defendants' Local Rule 56.1 statements.

Now the Court can address the merits of parties' arguments.

### A. Plaintiffs' Hours Worked Claim

Plaintiffs claim Defendants violated the IMWL and the FLSA by undercounting the number of overtime hours they worked. *See* 820 ILL. COMP. STAT. 105/4a; 29 U.S.C. § 207(a)(1). It is undisputed that HTS did not count the "travel hours" that were recorded on DARs and for which HTS paid the Drive Time Rate when computing how many hours its employees worked. Plaintiffs' SoF, [ECF No. 134], ¶ 21; Defendants' SoF, [ECF No. 143], ¶¶ 22, 24. The parties' dispute focuses on whether those hours, which the Court will call "Drive

Time," must be counted when deciding how much overtime Plaintiffs worked. That, in turn, is relevant to whether Plaintiffs were paid in accordance with the law for any overtime hours worked.[3]

To determine if an employee surpasses the 40-hour overtime threshold, an "employer must total all the hours worked by the employee for him in that workweek." 29 C.F.R. § 778.103. The term "hours worked" includes "all time during which an employee is suffered or permitted to work whether or not he is required to do so." 29 C.F.R. § 778.223.[4] The FLSA does not define "work." *Musch v. Domtar Indus., Inc.*, 587 F.3d 857, 859 (7th Cir. 2009). The Supreme Court, though, has provided significant guidance about the meaning of that crucial term. In 1944, the Supreme Court "described 'work or employment' as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). In a subsequent opinion that same year, the Supreme Court "clarified that 'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA" and that "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Id.* (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)). Then, in 1946, the Supreme Court "defined 'the statutory workweek' to 'includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace.'" *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–

---

[3] Except as discussed below, the parties in this case do not argue that there are any differences between the IMWL and the FLSA that are material to this case. *See Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1074 (N.D. Ill. 2005). Thus, the Court assumes there are none.

[4] "Hours worked" also includes "[a]ll time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace." 29 C.F.R. § 778.223. Plaintiffs do not argue this alternative encompasses Drive Time.

91 (1946)). The Seventh Circuit has noted that, in light of the Supreme Court's decisions, "[b]y definition, 'work' is performed not for the employee's 'convenience,' but for the employer's benefit." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011).

Plaintiffs contend Defendants bear the burden of proving Drive Time is not hours worked. But Plaintiffs bear the burden to prove that they performed overtime work for which they were not properly compensated. *Melton v. Tippecanoe Cty.*, 838 F.3d 814, 818 (7th Cir. 2016); *Kellar*, 664 F.3d at 173; *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 594 (7th Cir. 2008). Only after Plaintiffs have established that they actually performed uncompensated work do Defendants "bear the burden of proving that an exception applies to the general rule that work is compensable under the FLSA.'" *Pietrzycki*, 197 F. Supp. 3d at 1023 (quoting *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 747 F.Supp.2d 1043, 1051 (E.D. Wis. 2010)) (internal quotation marks omitted).

Department of Labor regulations state that "[t]he principles which apply in determining whether or not time spent in travel is working time depend upon the kind of travel involved." 29 C.F.R. § 785.33. Travel between jobsites and travel during which an employee does work must be counted as hours worked. 29 C.F.R. § 785.38; 29 C.F.R. § 785.41. Time spent in certain other types of travel also must be counted as hours worked. *See* 29 C.F.R. § 785.36–40. "[O]rdinary travel from home to work," though, "need not be counted as hours worked." 29 C.F.R. § 785.34 (internal citation omitted); *see also* 29 C.F.R. § 785.35 ("An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. Normal travel from home to work is not worktime."). "This rule applies even where employees travel together to a work site, either in an employee's vehicle or a company-owned vehicle . . . ." *Wren*

13

*v. RGIS Inventory Specialists*, 2009 WL 2612307, at *6 (N.D. Cal. Aug. 24, 2009). This rule also applies even when an employee works "at different job sites" instead of at a fixed location. 29 C.F.R. § 785.35. Therefore, Plaintiffs must show that Drive Time involves more than ordinary home-to-work travel.

Plaintiffs' first and main argument is that HTS had a custom or practice of paying employees for Drive Time and entered into a nonwritten contract to pay them for Drive Time. Plaintiffs contend that, under an amendment to the FLSA called the Portal-to-Portal Act of 1947 (the "PPA"), 29 U.S.C. § 254, this custom, practice, or contract is sufficient to make all Drive Time into hours worked. In response, Defendants assert HTS did not have a custom, practice, or contract of compensating for Drive Time. Defendants also say that, in any event, Drive Time cannot count as hours worked because the activity of riding as a passenger in a vehicle is not work.

As discussed below, even though the Court agrees with Plaintiffs that HTS had a custom, practice, or contract with its employees to compensate them for traveling as passengers in an HTS truck or other vehicle to and from a jobsite, the Court disagrees that the existence of such a custom, practice, or contract automatically makes Drive Time into hours worked under the PPA as a matter of law. Neither party addresses this issue very well in their written submissions. The PPA, however, does not turn ordinary home-to-work commuting into hours worked and Plaintiffs have not shown in their summary judgment filings that Drive Time should be characterized as anything other than ordinary home-to-work travel based on the record developed in support of their summary judgment motion. The Court will first discuss Plaintiffs' hours worked and regular rate claims and then address Defendants' argument that the PPA provides them with a defense to Plaintiffs' claims. *See infra* Section III(1)(C).

14

The Court's analysis of Plaintiffs' claims is as follows. 29 U.S.C. § 254(d) is the only provision of the PPA that affects "the determination of hours worked." 29 C.F.R. § 790.5. Subsection (d) provides that "in determining the time for which an employer employs an employee with respect to" the activities described in § 254(a), "there shall be counted . . . only that time[] during which the employee engages in any such activity which is compensable within the meaning of" § 254(b) and (c). 29 U.S.C. § 254(d).[5] Because § 254(b) does not make any activity into compensable work in the first instance, *see Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 360 (2d Cir. 2011), § 254(d) "does not make such time hours worked under the [FLSA], if it would not be so counted" if the PPA never were passed. 29 C.F.R. § 790.7; *see also* 29 C.F.R. § 790.5. "The general rule . . . is and *always has been* that the FLSA does not treat ordinary home-to-job-site travel as compensable." *Kuebel*, 643 F.3d at 360; *see Shearer v. Edger Associates Inc.*, 2015 WL 9274928, at *4 (M.D. Fla. Dec. 18, 2015); *Gilmer v. Alameda-Contra Costa Transit Dist.*, 2010 WL 289299, at *5 (N.D. Cal. Jan. 15, 2010); *Wren*, 2009 WL 2612307, at *7; *Johnson,* 554 F. Supp. 2d at 708; 29 C.F.R. § 785.34; *see also Walling v. Mid-Continent Pipe Line Co.*, 143 F.2d 308, 311 (10th Cir. 1944); *Harrington v. Empire Const. Co.*, 71 F. Supp. 324, 333 (D. Md. 1947), *modified*, 167 F.2d 389 (4th Cir. 1948); *Chepard v. May*, 71 F. Supp. 389, 393 (S.D.N.Y. 1947); *Bulot v. Freeport Sulphur Co.*, 45 F. Supp. 380, 381 (E.D. La. 1942). In other words, a custom, practice, or contract of paying for ordinary home-to-work commuting cannot make that travel time into hours worked if it would not have been characterized as such before Congress passed the PPA.

---

[5] Subsection (c) provides: "For the purposes of subsection (b) of this section, an activity shall be considered as compensable under such contract provision or such custom or practice only when it is engaged in during the portion of the day with respect to which it is so made compensable." 29 U.S.C. § 254(c).

Two courts have addressed the exact argument raised by Plaintiffs in somewhat factually similar scenarios. In *Johnson v. RGIS Inventory Specialists*, the plaintiff employee's job was to travel to retail stores to count merchandise. 554 F. Supp. 2d 693, 696 (E.D. Tex. 2007). About half of the time the plaintiff worked at "local" stores, and the other half of the time she worked at "travel" stores (*i.e.*, those more than 20 miles away). *Id.* To help employees get to travel stores, the defendant employer provided a free transportation option that employees could choose (but were not required) to take. *Id.* If an employee wanted to drive in the employer-provided vans, she had to arrive at a designated meet site by a designated time. *Id.* at 696–97. Before March 2004, the employer paid employees for the time spent traveling in the employer's vans at a rate less than their regular wage. *Id.* at 697. Then, in March 2004, the employer stopped paying anything for the first and last hour spent traveling in the employer's vans and paid the minimum wage for all other travel time. *Id.* The plaintiff sued the employer, claiming, among other things, that the time she spent traveling in the employer's vans was compensable under the FLSA.

The court recognized that "[n]ormal travel from home to work is not worktime" under the FLSA. *Id.* at 703 (quoting 29 C.F.R. § 785.35). The court explained that, whether travel is "normal" turns on "a subjective standard, defined by what is usual within the confines of a particular employment relationship." *Id.* (quoting *Kavanagh v. Grand Union Co.*, 192 F.3d 269, 272 (2d Cir. 1999)). As the court put it, "home-to-work travel that is 'a contemplated, normal occurrence' of the employment is viewed as 'normal travel'" under the relevant regulation. *Id.* (quoting *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1287 n.3 (10th Cir. 2006)). The court concluded the plaintiff's travel to and from stores, as a general matter, "was ordinary home-to-work-and-back travel." *Id.* at 704. The court noted that the defendant's decision to

16

provide a free commuting option did not alter this fact. *Id.* at 705. The court also rejected plaintiff's argument that ordinary commuting counted as "hours worked" when an employer has a custom, practice, or contract of compensating for that activity. *Id.* at 706–08. In doing so, the court explained that "ordinary home-to-work travel was not viewed as hours worked[] even prior to the enactment of the [PPA]," and, therefore, that "the travel at issue . . . did not qualify as hours worked, even if [the defendant] had a custom or practice of paying for it." *Id.* at 707.

In *Wren v. RGIS Inventory Specialists*, a different court dealt with a very similar case against the same defendant employer. 2009 WL 2612307, at *3. The plaintiff employee claimed the post-March 2004 policy violated the FLSA because, among other reasons, the travel time counted as hours worked. The court recognized travel between home and work is a normal incident of employment and does not count as hours worked. *Id.* at *6. The court explained this rule applies even when employees travel together in an employer-provided vehicle. *Id.* The court ultimately concluded the travel at issue in that case constituted no more than ordinary home-to-work travel. *Id.* at *7. The court then went on to reject the plaintiff's argument that the defendant employer's policy of paying for travel made that time into worktime, reaffirming that a custom or practice does not make time into hours worked when the time would not count as hours worked in the absence of the policy. *Id.* at *7–8.

Plaintiffs rely on three cases to support their argument that a custom, practice, or contract of compensating for travel time can make that time count as hours worked. None of the cases actually supports this proposition. In *Raper v. State*, the Iowa Supreme Court case never addressed whether the plaintiff peace officers' travel time would have counted as hours worked in the absence of the PPA, possibly because the state patrol regulations relevant to the plaintiffs' claims in that case provided the peace officers were "on duty at any time they [were] in uniform

17

or in a state vehicle." 688 N.W.2d 29, 46 (Iowa 2004). Instead, the court focused on the narrower factual question of whether there was a custom or practice of paying for the travel time at issue. *Id.* at 46. Similarly, in *Marshall v. R & M Erectors, Incorporated*, there is no indication that the defendants disputed whether the travel time at issue counted as hours worked and the court never explicitly addressed the issue. 29 F. Supp. 771, 776–79 (D. Del. 1977). Finally, Plaintiffs over-read the statement in *Vega v. Gasper* that "[o]rdinary home-to-work travel is clearly not compensable under the [PPA] unless a contract or custom of compensation exists between the employer and the employees." 36 F.3d at 424. In that case, the plaintiffs did not argue that the employer had a custom or practice of compensating for that time, and the Fifth Circuit did not address the issue. Moreover, the broad reading espoused by Plaintiffs would be inconsistent with Department of Labor regulations. *See* 29 C.F.R. § 790.5; 29 C.F.R. § 790.7.

In summary, none of the cases cited by Plaintiffs squarely deals with whether ordinary home-to-work travel can be made into hours worked solely by a custom, practice, or contract of compensating for that time. On the other hand, the regulations discussed above, *Johnson*, and *Wren* all directly address the issue. All of them agree that a custom, practice, or contract under the PPA does not make ordinary home-to-work commuting time into hours worked because that time was not compensable before Congress enacted the PPA. The Court agrees with that line of reasoning. Therefore, Plaintiffs' first argument is of no avail.

The Court recognizes that Plaintiffs assert this is not a run of the mill home-to-work commuting case. Plaintiffs point out that, at least when traveling in HTS trucks, they went to designated meeting locations and did not commute directly from or to home. Plaintiffs emphasize that HTS implemented its new Drive Time compensation arrangement in 2012 to compensate employees for long travel times and to attract qualified workers. Plaintiffs also

18

contend HTS considered Drive Time to be payment for regular hours worked because it included Drive Time payments as taxable "Earnings" on paystubs and foremen marked start/end times on DARs that incorporated Drive Time. For all these reasons, Plaintiffs say, Drive Time is more than ordinary home-to-work travel.[6]

The Court is not convinced by these arguments on the record now before it. HTS did not require employees to go to a designated meeting site at the start or end of the day. Instead, they were free to go directly from their homes to their assigned towers at the start of the day and directly to their homes from their assigned towers at the end of the day. HTS also did not require employees to travel in an HTS truck. As *Wren* and *Johnson* show, an employer's decision to provide transportation and designate a meeting location does not transform ordinary commuting into hours worked. Although employees sometimes had to travel significant distances to get between their homes and their assigned towers, Plaintiffs do not contest the fact that such travel was a contemplated and normal part of employees' jobs with HTS. The record on summary judgment is poorly developed with respect to how much time Plaintiffs spent traveling to job sites in company vehicles. It may be that Plaintiffs could establish that the amount of time spent in this way should not be characterized as ordinary home-to-work travel. But Plaintiffs have not done so on this record.

At oral argument, Plaintiffs directed the Court to three Supreme Court decisions that they contend show Drive Time counts as hours worked. Those cases, however, all are easily

---

[6] Plaintiffs state in one sentence in their combined response and reply brief that HTS benefited from Drive Time because it charged some customers for certain travel time. Plaintiffs' Combined Brief, [ECF No. 147], at 11–12. But the record now before the Court indicates HTS only charged customers for travel when it sent a crew to address certain "troubleshooting scenarios." Plaintiffs' Statement of Additional Material Facts in Support of Their Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Additional SoF"), [ECF No. 149], ¶ 13; Motter's Dep., [ECF No. 134-2], at 19. As the parties discussed during oral argument, HTS treated travel time in those situations as regular work, meaning HTS paid regular wages and counted it as hours worked. So, that travel time is not at issue in this case.

distinguishable because they involved travel on an employer's premises that was controlled by the employer and was necessarily and primarily performed for the employer's benefit. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161 (1945); *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944)). In each decision, the Supreme Court expressly distinguished the type of travel at issue from travel between home and a job site. *Anderson*, 328 U.S. at 692; *Jewell Ridge*, 325 U.S. at 166; *Tennessee Coal*, 321 U.S. at 598; *see also IBP*, 546 U.S. at 35 ("Moreover, there is a significant difference between the open-ended and potentially expansive liability that might result from a rule that treated travel before the workday begins as compensable, and the rule at issue in this case.").

Plaintiffs finally raise three arguments that apply to subsets of Drive Time rather than all Drive Time. Plaintiffs first say some Drive Time counts as hours worked under the "continuous workday rule" because some Plaintiffs performed work either before they traveled to the first tower of the day or on their way back at the end of the day. Plaintiffs also contend some Drive Time counts as hours worked because Plaintiffs sometimes performed additional activities while traveling as a passenger during Drive Time. Plaintiffs lastly assert some Drive Time counts as hours worked because they traveled away from their home communities. Each of these variations will be addressed in turn. None of them justify granting summary judgment in Plaintiffs' favor on the record presented.

### i. The Continuous Workday Rule

Plaintiffs argue at least some Drive Time counts as hours worked under the "continuous workday rule," which also is known as the "whistle-to-whistle rule," because employees sometimes performed work at a warehouse either before traveling to the first tower of the day or

20

after traveling back from the last tower of the day. The parties' Local Rule 56.1 statements address activities performed at warehouses in a haphazard and incomplete manner again depriving the Court of an adequate record on which to decide the summary judgment motions. Plaintiffs' Local Rule 56.1(a) statement does not contain any statements related to activities performed at warehouses. Plaintiffs addressed the issue at some length in their Statement of Additional Material Facts, but Defendants did not respond to that statement. As a result, the parties' conflicting factual positions about activities performed at warehouses is most clearly revealed in Plaintiffs' response to Defendants' Local Rule 56.1(a) statement. *See*, *e.g.*, Plaintiffs' Response to Defendants' SoF, [ECF No. 148], at ¶¶ 3, 8, 9, 15, 19. But the Court will summarize each party's version on this issue, including facts to which the other has not responded.

According to Plaintiffs, when employees arrived at HTS's warehouse in the morning, they often performed pre-trip activities. "Examples of the work performed" include cleaning, loading, and servicing the HTS trucks they would travel in. Plaintiffs' Additional SoF, [ECF No. 149], ¶ 2; *see also id.* ¶ 3. Plaintiffs say that pre-trip activities benefited HTS because they helped crews get to towers faster and that the activities were integral to the employees' work because the tasks had to be completed before going to a tower. *See id.* ¶¶ 4, 5. Plaintiffs contend pre-trip activities took 30 or more minutes. *Id.* ¶¶ 14–15. Plaintiffs claim that employees were asked to do pre-trip activities and that, if they refused, they could be written up. *Id.* ¶¶ 7–8. Plaintiffs also assert employees performed work at customers' warehouses, including loading materials, on their way to towers. *Id.* ¶ 11. Likewise, Plaintiffs claim that, at HTS's warehouse at the end of the day, employees sometimes moved boxes to be burned or cleaned. *Id.* ¶ 12.

Because Defendants did not respond to Plaintiffs' Statement of Additional Facts, it is not entirely clear to what extent they dispute what Plaintiffs say about activities at warehouses. But Defendants' Local Rule 56.1(a) statement breaks with much of what Plaintiffs say. As an initial matter, Defendants claim tower technicians were not required or directed to perform the pre-trip activities described by Plaintiffs. Defendants' SoF, [ECF No. 143], ¶¶ 9, 15, 19. Defendants say tower technicians rarely performed work-related activities at HTS's warehouse and normally only loaded their personal belongings into an HTS truck. *Id.* ¶¶ 9, 15. When employees performed work at a warehouse, Defendants assert HTS paid their regular wages. *See*, *e.g.*, ¶ 8. Defendants only refer to employees "readying the HTS truck or trailer or loading materials," and do not indicate whether those employees also did things like training or assisting the warehouse manager. *Id.* ¶ 9. Defendants also claim it is "a very rare occurrence" that any employee performed work at a customer's warehouse at HTS's direction. *Id.* ¶ 15. Defendants do not address what activities, if any, employees performed after returning to HTS's warehouse at the end of the day. Plaintiffs dispute virtually everything Defendants say in this regard. *See*, *e.g.*, Plaintiffs' Response to Defendants' SoF, [ECF No. 148], at ¶¶ 3, 8, 9, 15, 19.

The parties' briefs concerning the application of the continuous workday rule also are not helpful. Plaintiffs did not raise the issue until their combined response and reply brief. Even in that brief, Plaintiffs do not discuss activities performed at warehouses at the end of the day (*i.e.*, taking boxes to be burned or cleaned) or activities performed at customers' warehouses. Instead, Plaintiffs focus only on activities performed at the start of the day at HTS's warehouses. Defendants' responsive argument in their reply brief consists of no more than a general statement of the law, a few conclusory assertions, and an attempt to distinguish two cases cited by Plaintiffs. Because no party develops or supports their respective arguments regarding what

22

activities were performed at customers' warehouses and at HTS's warehouse at the end of the day, the Court will not address whether those activities marked the beginning or end of the workday.

The law in this area is clearly established. Under the continuous workday rule, "workers must be compensated for time they spend doing what might otherwise be non-compensable activities if those activities occur during the 'period between commencement and completion on the same workday of an employee's principal activity or activities,' subject to FLSA carve outs." *Mitchell v. JCG Indus., Inc.*, 753 F.3d 695, 696 (7th Cir. 2014) (Williams, J., dissenting from denial of rehearing *en banc*). The term "'principal activity or activities' . . . embraces all activities which are 'an integral and indispensable part of the principal activities.'" *IBP*, 546 U.S. at 21 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)). Courts often consider three factors to determine whether an activity is integral and indispensable: (1) whether the activity is required by the employer; (2) whether the activity is necessary for the employee to perform his or her duties; and (3) whether the activity primarily benefits the employer. *Franklin v. Kellogg Co.*, 619 F.3d 604, 620 (6th Cir. 2010); *Harvey v. AB Electrolux*, 9 F. Supp. 3d 950, 969 (N.D. Iowa 2014); *Ceja-Corona v. CVS Pharmacy, Inc.*, 2013 WL 796649, at *3 (E.D. Cal. Mar. 4, 2013); *Adams v. Alcoa, Inc.*, 822 F. Supp. 2d 156, 162 (N.D.N.Y. 2011).

There is a factual dispute in this case as to whether employees were required to perform pre-trip activities. Defendants claim no tower technicians were required to clean, service, or load HTS trucks while Plaintiffs say they sometimes were asked to do so and were subject to discipline if they refused. No party addresses to what extent cleaning and servicing HTS trucks was necessary to the employees' performance of their duties at towers. Plaintiffs have cited evidence that loading HTS trucks was beneficial to HTS because it saved time and was necessary

23

because the equipment, materials, and tools were used at towers. Plaintiffs' Additional SoF, [ECF No. 149], ¶¶ 4, 5. Defendants do not address either necessity or benefit in their statements of material fact or briefs. But, as discussed above, they dispute enough of what Plaintiffs say to muddy the waters on work performed at the beginning and end of the day. The Court is not prepared to say, based on the deficient record developed at this juncture, that Defendants have waived that argument.

To the extent employees spent periods of time performing activities such as loading HTS trucks, the Court does not see why that would not be sufficient to mark the start of their workdays. Although there is a genuine issue of material fact as to whether employees are required to perform these activities, they are done for HTS's benefit and are integral and indispensable to the principal activities performed at towers. But this is not enough on its own for the Court to find Drive Time counts as hours worked. The parties dispute how often employees performed these activities and it is not clear whether employees largely did the same activities or whether there was significant variation in what they did.[7] Although Defendants default, to some extent, in responding to Plaintiffs' argument on this point, Plaintiffs do not make enough of an affirmative showing to entitle them to summary judgment on this issue. And Plaintiffs did not raise this argument in their opening brief. Therefore, neither party is entitled to summary judgment based on their continuous workday arguments.

### ii. Additional Activities

Plaintiffs argue at least some Drive Time counts as hours worked because, at times, employees performed other compensable work while traveling as passengers. The record now before the Court is poorly developed with respect to what employees did during Drive Time

---

[7] The parties also do not address whether travel to or from a warehouse where work was performed constitutes travel between job sites during the workday within the meaning of 29 C.F.R. § 785.38.

(besides travel as passengers). During oral argument, Plaintiffs conceded that employees usually slept or otherwise used their time as they pleased and did not perform other activities that constituted work. The parties seem to agree, though, that at least sometimes employees performed activities related to their work for HTS. Plaintiffs' Additional SoF, [ECF No. 149], ¶ 16; *see also* Motion to Decertify, [ECF No. 140], at 12. Defendants have not identified what activities were performed. Plaintiffs say the "passengers would pass along site plans, discuss job requirements, fill out paperwork, . . . and have telephone calls with management." Plaintiffs' Additional SoF, [ECF No. 149], ¶ 16. That sounds plausible as a matter of common sense. Neither party, however, has clearly shown how often employees performed any such activities although, based on the parties' statements during oral argument, it was the exception, not the rule. It also is unclear whether and, if so, how often HTS compensated time spent in these activities as regular work.

Defendants argue the Drive Time spent performing these activities does not count as hours worked because the activities are *de minimis*. "The *de minimis* doctrine allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute." *Kellar*, 664 F.3d at 176; *see also* 29 C.F.R. § 785.47. The employer bears the burden of showing work is *de minimis*. *Kellar*, 664 F.3d at 176. "When evaluating whether work performed by an employee is *de minimis*, courts typically consider the amount of time spent on the extra work, the practical administrative difficulties of recording additional time, the regularity with which the additional work is performed, and the aggregate amount of compensable time." *Id.*

The factual record now before the Court is not developed with respect to any of the *de minimis* factors. The parties' statements of material fact are silent about how much time

employees spent in the activities identified by Plaintiffs, how regularly the activities were performed, the aggregate amount of compensable time, and the administrative difficulty of tracking the time spent performing these activities. The parties also do not address in any depth either these factual matters or the legal principles governing the *de minimis* analysis in their briefs.[8] Therefore, neither Plaintiffs nor Defendants have shown that, based on the undisputed facts, they are entitled to judgment as a matter of law on this issue.[9]

### iii. Travel Away from Home

During oral argument, Plaintiffs raised for the first time the argument that at least some Drive Time should be counted as hours worked because it involved travel away from home overnight. Plaintiffs cited 29 C.F.R. § 785.39, which states that "[t]ravel that keeps an employee away from home" and "cuts across the employee's workday" is worktime. 29 C.F.R. § 785.39. Plaintiffs made various factual representations, saying, among other things, that employees traveled away from home during their workday when they were "on" for a few consecutive days. But Plaintiffs conceded no party's Local Rule 56.1 statements included any of these facts. Understandably, Defendants did not offer a specific response to this theory raised for the first time at oral argument. Because Plaintiffs did not develop and support this argument in their written filings, the Court will not base a decision on the pending motions for summary judgment

---

[8] At oral argument, the parties made various arguments about the *de minimis* doctrine based on factual representations that they conceded were not contained in their statements of fact or briefs. Again, as noted elsewhere in this Memorandum Opinion, neither party developed the record as it needed to be developed to support the rhetorical arguments they make throughout their summary judgment briefs.

[9] During oral argument, the parties briefly disagreed about whether the activities performed by employees during Drive Time occurred during scheduled working hours (which may preclude the application of the *de minimis* doctrine). For the reasons explained in the hours worked and continuous workday sections of this Memorandum Opinion, that dispute cannot be resolved on the record and arguments now before the Court.

on Plaintiffs' travel away from home theory. That does not preclude Plaintiffs from making this argument as the case progresses if it can be better supported.

For all of these reasons, Plaintiffs have not shown based on the undisputed facts that Drive Time counts as hours worked and Defendants have not shown based on the undisputed facts that Drive Time does not count as hours worked. Therefore, the Court cannot grant summary judgment to either party on the issue of whether Defendants improperly excluded Drive Time from their calculation of hours worked by Plaintiffs including for purposes of determining overtime. The Court will, however, go on to address Plaintiffs' argument that Defendants improperly calculated their regular rate by not including payments made at the Drive Time Rate in that calculation, including for purposes of paying overtime compensation, because that could be helpful in moving this case forward to an eventual resolution.

### B. Plaintiffs' Regular Rate Claim

The FLSA requires an employer who employs an employee "for a workweek longer than forty hours" to pay that employee "compensation for his employment in excess of" 40 hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employee's regular rate is calculated "by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. Importantly, the FLSA defines "regular rate" to include, subject to some exclusions, "*all* remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e) (emphasis added); *see also Chavez v. City of Albuquerque*, 630 F.3d 1300, 1305 (10th Cir. 2011) ("The regular rate may include more than just an employee's contractually-designated hourly wage if the employee is, in fact, paid more than that hourly wage."). All remuneration that is not

27

encompassed by an exclusion must be included when calculating the regular rate. 29 C.F.R. § 778.200 ("It is important to determine the scope of these exclusions, since all remuneration for employment paid to employees which does not fall within one of these seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is determined."). Even payments for hours spent traveling to and from a workplace that "are not regarded as working time under the [FLSA]" must be included in the regular rate unless an exclusion applies. 29 C.F.R. § 778.223.

In this case, it is undisputed that HTS calculated an employee's overtime compensation by multiplying the employee's regular wage rate by 1.5 in those weeks that the employee worked more than 40 hours. HTS did not include Drive Time when it calculated an employee's eligibility for overtime nor did it include payments at the Drive Time Rate in determining an employee's regular rate for purposes of the 1.5 times regular rate calculation. Plaintiffs argue this violated the IMWL and the FLSA. *See* 29 U.S.C. § 207(a)(1); 820 ILL. COMP. STAT. 105/4a. According to Plaintiffs, Drive Time payments are remuneration for employment because HTS pays the Drive Time Rate for travel to and from job sites in order to remain compensation-competitive in its industry and to attract talented employees to work for it. Plaintiffs also argue no exclusion applies.

Defendants contend Drive Time payments fit within the statutory exclusion in 29 U.S.C. § 207(e)(2). This exclusion must be interpreted narrowly and Defendants bear the burden of proving that it applies. *Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 330–31 (3d Cir. 2016); *Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33, 36 (1st Cir. 2014); *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006).

28

Section 207(e)(2) has three parts. The first excludes "payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause." 29 U.S.C. § 207(e)(2). The Court will assume for a moment that employees do not perform work during Drive Time. Even then, this provision would not apply. Employees, who were traveling to job sites, were not on vacation, taking a holiday, or ill. HTS did not fail to provide work because of "unpredictable obstacles beyond [its] control." 29 C.F.R. § 778.218(c). And the catchall—"other similar cause"—cannot save Defendants because that provision only covers "payments made for periods of absence" when those absences are "of a nonroutine character which are infrequent or sporadic or unpredictable." 29 C.F.R. § 778.218(d).

The second part of § 207(e)(2) excludes "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer." 29 U.S.C. § 207(e)(2). Drive Time payments are not made to reimburse employees for expenses they incurred.

The third part of § 207(e)(2) excludes "other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). This provision encompasses payments "'similar' in character to the payments specifically described in" § 207(e)(2). 29 C.F.R. § 778.224. As already explained, the payments specified are not similar to Drive Time payments. Moreover, the last clause of § 207(e)(2) does not provide an independent basis for excluding payments from the regular rate calculation because it "is but a mere re-articulation of the 'remuneration for employment' requirement set forth in the preambulary language of § 207(e)." *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006).

Defendants only cite 29 U.S.C. § 207(e)(2) in one of their summary judgment briefs. In that filing, Defendants block-quote and underline a portion of that provision. Defendants' SJ Reply, [ECF No. 156], at 3–4. They then assert in a conclusory manner, "Defendants *have* established this exemption applies and *have* met their burden." *Id.* at 4. The Court does not agree. Defendants' undeveloped and unsupported argument is not sufficient to satisfy the burden Defendants bear to prove the exclusion applies.

On the other hand, even though Drive Time payments constitute remuneration that should be considered when calculating Plaintiffs' regular rate, Plaintiffs have not shown that they are entitled to judgment as a matter of law on their regular rate claim based on the undisputed facts. An employer violates the IMWL and the FLSA when it pays "less than one and one-half times the regular rate." 29 U.S.C. § 207(a)(1); 820 ILL. COMP. STAT. 105/4a. As noted above, the regular rate is calculated "by dividing [an employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. Because, as discussed in the preceding section of this Memorandum Opinion, the Court cannot say whether all, some, or none of Drive Time counts as hours worked, the Court cannot determine whether HTS paid Plaintiffs too low of an hourly rate for their overtime.

In addition, Plaintiffs have not pointed to undisputed facts that establish Plaintiffs who worked overtime were underpaid. For example, Plaintiffs do not argue that any Plaintiff had a regular wage of less than $10 per hour. Instead, all of the regular wage rates reflected in the parties' briefs and Local Rule 56.1 statements are higher than $10 per hour. If, for instance, all Drive Time counts as hours worked (as Plaintiffs argue it does), then Defendants may well have paid Plaintiffs higher overtime rates than they were required to pay under the IMWL and the

FLSA. That is because if Drive Time counts as hours worked, then the Drive Time Rate of $10 per hour should be included on a weighted average basis in HTS's determination of a proper overtime rate. That, in turn, would result in a lower overtime rate than would apply if HTS used only employees' regular wage rates to determine overtime compensation due. *See* 29 C.F.R. § 778.115. Therefore, because of the uncertainty regarding Plaintiffs' hours worked and the uncertainty about how the exclusion of Drive Time from hours worked would affect the amount, if any, of overtime compensation due to them, Plaintiffs are not entitled to summary judgment on their regular rate claim. To be clear, the deficiencies in the record go not only to the determination of damages but also to liability for an alleged underpayment of overtime compensation.

### C. The Portal-to-Portal Act

As noted earlier in this Memorandum Opinion, both parties argue they are entitled to summary judgment based on the PPA, 29 U.S.C. § 254.[10] Plaintiffs cite the PPA for the proposition that the existence of a custom, practice, or contract to pay for Drive Time renders Defendants liable under the FLSA. As discussed above, the Court disagrees with Plaintiffs that a custom, practice, or contract under the PPA alone can make travel time into hours worked. *See supra* Section III(1)(A). Plaintiffs also need to show that Drive Time is not ordinary home-to-work commuting, which they have not yet done on this record. That leaves Defendants' argument that the PPA shields them from liability as a matter of law because they do not have a custom, practice, or contract to pay for Drive Time. As discussed below, however, the Court

---

[10] Defendants argue they are entitled to summary judgment under a provision of the IMWL concerning ridesharing that they seem to believe is analogous to the PPA. 820 Ill. Comp. Stat. 105/2.1. Defendants raise this argument for the first time in their reply brief and, even in that brief, do no more cite the statute in a string citation and drop quotations from it and a related provision in a footnote. Defendants have waived this argument in the context of their motion for summary judgment. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016); *Med. Assur. Co. v. Miller*, 2010 WL 2710607, at *3 (N.D. Ind. July 7, 2010).

agrees with Plaintiffs that Defendants had a custom, practice, or contract to compensate employees for traveling as passengers in an HTS truck or other vehicle. That means if Plaintiffs can show on a more developed record that this category of Drive Time is not ordinary home-to-work commuting, then Plaintiffs will prevail on their FLSA claim in this respect. It is useful to begin the analysis with a discussion of the various provisions of the PPA and how they work together.

### i. Background of the PPA

The PPA, which became law in 1947, narrows the coverage of the FLSA with respect to certain activities. *Balestrieri v. Menlo Park Fire Prot. Dist.*, 800 F.3d 1094, 1099 (9th Cir. 2015); *Guyton v. Tyson Foods, Inc.*, 767 F.3d 754, 758 (8th Cir. 2014); *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 795 (8th Cir. 2014). The PPA accomplishes this by immunizing employers from liability related to "two categories of activities that had been compensable under prior Supreme Court precedent." *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 409 (5th Cir. 2011); *see also Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 517 (2014). In § 254(a), the PPA provides that "no employer shall be subject to any liability or punishment under" the FLSA "on account of the failure . . . to pay an employee overtime compensation[] for or on account of[:]

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

The Employee Commuting Flexibility Act of 1996 (the "ECFA"), 29 U.S.C. § 254(a), amended the PPA by adding an additional sentence at the end of § 254(a). *Burton v. Hillsborough Cty., Fla.*, 181 F. App'x 829, 833 (11th Cir. 2006). The ECFA provides:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a). The sentence added by the ECFA does not create "an entirely new category of exempted activity," but, rather, modifies the existing exclusions in § 254(a)(1) and (2). *Burton*, 181 F. App'x at 835.

Although § 254(a) relieves employers from liability for certain employee activities, § 254(b) reimposes that same liability in certain instances. Specifically, § 254(b) provides § 254(a) will not relieve an employer of liability "with respect to any activity" that is compensable by either:

> (1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or
>
> (2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

29 U.S.C. § 254(b).

To summarize, the PPA does not impose liability on employers in the first instance for certain activities. Section 254(a) "only *exempts* them from liability for certain activities that the Supreme Court had briefly imposed before the [PPA] overruled it." *Kuebel*, 643 F.3d at 360.

33

Section 254(b) then re-imposes this liability when the relevant activity is compensable by a custom, practice, or contract.

### ii. Application of the PPA's Custom, Practice, or Contract Exception to the Facts of This Case

As described above, § 254(a) of the PPA provides that an employer shall not be liable for the failure to pay overtime compensation for certain activities. Defendants argue Drive Time is an activity that is encompassed by § 254(a). Plaintiffs dispute this point, contending Drive Time is more than just travel to or from the actual place of performance of their principal activities. Plaintiffs devote more of their attention, though, to arguing HTS had a custom, practice, or contract within the meaning of § 254(b) of compensating employees for Drive Time. Defendants dispute whether HTS had such a custom, practice, or contract. Because the parties' disagreement concerning § 254(b) is dispositive of Defendants' PPA argument, the Court will address that issue first.

The PPA does not relieve an employer of liability for failing to pay overtime compensation for an activity that is compensable by "an express provision of a . . . nonwritten contract in effect, at the time of such activity, between such employee . . . and his employer." 29 U.S.C. § 254(b). "The words 'compensable by an express provision' indicate that both the intent of the parties to contract with respect to the activity in question and their intent to provide compensation for the employee's performance of the activity must satisfactorily appear from the express terms of the agreement." 29 C.F.R. § 790.9.

Plaintiffs contend HTS entered into a nonwritten contract with Plaintiffs (and its other employees) to compensate them for the activity of traveling as passengers in a vehicle. Plaintiffs' Local Rule 56.1(a) Statement contains several facts related to this theory, none of which Defendants dispute. Plaintiffs first state "HTS's communicated understanding and

agreement with Class and Collective members is that in exchange for riding as a passenger in a vehicle, HTS employees are paid the reduced-rate $10 per hour Drive Time rate." Plaintiffs' SoF, [ECF No. 134], ¶ 14.[11] Next, Plaintiffs state "HTS has a common understanding with its employees that they will receive the Drive Time rate for riding in a vehicle." Plaintiffs' SoF, [ECF No. 134], ¶ 15. The last relevant statement is that "[p]aying for Drive Time allows HTS to remain compensation-competitive in its industry and to attract talented employees to work for it." *Id.* ¶ 9. Again, Defendants do not dispute any of these factual assertions. Moreover, Defendants' Local Rule 56.1(a) Statement contains only one paragraph that adds any gloss to the contract issue. In that statement, Defendants say employees are not incentivized to work for HTS solely because of the Drive Time arrangement. Defendants' SoF, [ECF No. 143], ¶ 12.

The Court must accept undisputed facts as true for the purposes of summary judgment. The undisputed facts of record here establish that HTS had a "communicated agreement" and "common understanding" with employees that they would be paid the Drive Time Rate for traveling as passengers in a vehicle and that HTS made this agreement to attract employees. Defendants do little to explain why these facts are insufficient to give rise to a nonwritten contract. Defendants say "there is no 'unwritten contract' to pay $10 per hour for Drive Time per 29 U.S.C. § 254 and 29 C.F.R. § 790.9." Defendants' SJ Reply, [ECF No. 156], at 2. Defendants, however, otherwise entirely ignore the issue. They neither dispute or discuss the facts mentioned above nor explain why the undisputed facts are insufficient to satisfy the legal

---

[11] This statement is supported by the deposition testimony of Motter; Matthew Overholt, HTS's Controller and Rule 30(b)(6) witness; and Tab Petersen, an HTS senior construction manager. Motter testified that he makes sure to tell every HTS hire that he will get $10 an hour for drive time, that "[i]t's a very known thing with everyone, and that the Drive Time arrangement is "just part of [employees'] compensation package." Deposition of Mark Motter ("Motter's Dep."), [ECF No.134-2], at 62–64. Overholt testified he told HTS's employees that they will be paid $10 per hour when they travel as a passenger. Deposition of Matthew Overholt ("Overholt's Dep."), [ECF No. 134-1], at 116–17. Finally, Petersen testified that employees normally asked whether they were paid a reduced rate for travel time and that he would tell them HTS did so. Deposition of Tab Petersen, [ECF No. 134-4], at 39.

requirements for a nonwritten contract. On this record, there is no reason why 29 U.S.C. § 254(b)(1) is not satisfied in this case with respect to the activity of traveling as a passenger in a vehicle (whether an HTS truck or a personal vehicle).

Even in the absence of a nonwritten contract, the PPA would not relieve Defendants of liability for failing to pay overtime compensation for an activity that was compensable by "a custom or practice . . . covering such activity." 29 U.S.C. § 254(b)(2). The words "custom" and "practice" "may be said to be descriptive generally of those situations where an employer, without being compelled to do so by an express provision of a contract, has paid employees for certain activities performed." 29 C.F.R. § 790.10. According to a Department of Labor regulation, "it is believed that the Congressional reference to . . . custom or practice was a deliberate use of non-technical words which are commonly understood." *Id.* As the regulation further notes, "custom or practice" is, "in common meaning, . . . rather broad in scope." *Id.*

Plaintiffs contend HTS had a custom or practice of compensating employees for all time spent traveling as passengers to or from a jobsite, regardless of whether the employees were traveling in an HTS truck or a personal vehicle. Defendants, though, argue HTS did not have a custom or practice of paying employees for any such time. As noted above, Defendants say foremen marked "travel hours" on DARs in a haphazard and inconsistent. According to Defendants, HTS's Drive Time arrangement amounted to "nothing more than a <u>general</u> employment policy." Defendants' Memorandum Contra/Brief in Opposition, Plaintiffs' Motion for Summary Judgment ("Defendants' SJ Response"), [ECF No. 141], at 7.

Plaintiffs rely mainly, although not exclusively, on the deposition testimony of Overholt and Motter. Overholt, HTS's Rule 30(b)(6) witness, testified as follows:

> Q. But for the last four years, it's been the [HTS] custom and practice to pay people who are riding to sites $10 an hour for the time that they're traveling to a site, correct?
> A. For the passengers, yes.
> Q. And that's been -- and that's the practice as to all tower technicians and foremen, correct?
> A. Yes, sir.
> Q. And that policy is applied at [HTS] on a uniform basis, correct?
> A. That's correct.

Overholt's Dep., [ECF No. 134-1], at 102–03. Motter offered similar testimony at his deposition:

> A. I would say [foremen] know that mobilization from the warehouse to the job site falls under drive time, as does mobilization from the job site back to the warehouse.
> Q. And you believe that that's consistent among all your foremen; they have the same understanding.
> A. Yes, I do.

Motter's Dep., [ECF No.134-2], at 22–23. Plaintiffs contend this testimony is sufficient to establish a custom or practice of compensating employees for Drive Time.

In response, Defendants say Overholt and Motter are mistaken and HTS did not have a uniform custom or practice of compensating employees for traveling as passengers. Defendants claim HTS "may have expected . . . and believed" Drive Time to be "uniformly applied," but that was not, in fact, what happened. Defendants' Motion to Decertify, [ECF No. 140], at 3; *see also id.* at 7. Defendants assert that, until the filing of this lawsuit, they did not know the Drive Time arrangement was not uniformly applied. In Defendants' telling, they discovered only in 2014 that "each Foreman applied the Drive Time [Rate] differently." *Id.* at 3. According to Defendants, Motter and Overholt were unaware of this fact when they were deposed in this case. Defendants' Decertification Reply, [ECF No. 152], at 4.

In their summary judgment briefs, Defendants repeatedly contend HTS did not have a custom or practice of compensating for any travel as passengers. Defendants' argument is set

forth in conclusory and general sentences, four of which cite to the same three paragraphs in their Local Rule 56.1(a) statement. *See, e.g.*, Defendants' SJ Response, [ECF No. 141], at 2, 5, 6, 7, 8; Defendants' Opening SJ Brief, [ECF No. 144], at 2, 5, 6, 8, 9; Defendants' SJ Reply, [ECF No. 156], at 2, 12–13. With a few exceptions discussed below, Defendants do not discuss the specific facts that supposedly show a custom or practice did not exist or how the law applies in light of those facts. Defendants mostly fall back on the assertion that the Drive Time arrangement was "not uniformly applied." But this contention sets up a straw man. A custom or practice to compensate for travel as a passenger can exist even if, at times, HTS deviated from that custom or practice. For example, a person may have a custom or practice of parking his car at the curb in front of his house even if he occasionally parks in the garage. If, on the other hand, Defendants are saying the record does not support the conclusion that HTS did not have a custom or practice of paying for travel as a passenger at all, then that position is not supported on this record.

One of Defendants' few specific arguments is that HTS sometimes awarded the Drive Time Rate for activities other than traveling as passengers. *See* Defendants' SJ Reply, [ECF No. 156], at 11–12. Specifically, Defendants cite an exchange in one deposition in which a foreman said he paid the Drive Time Rate to employees for time spent performing "any task that needed to be done at a customer's warehouse" if the employees were at the warehouse for only a short period of time. *Id.* Even if that is true, however, that does not show HTS failed to compensate employees for Drive Time, it just means sometimes HTS also paid the same hourly rate for an activity other than traveling as passengers to or from a job site. *See* 29 C.F.R. § 790.10(e) ("'The custom or practice' by which compensability of an activity is tested under the statute is one 'covering such activity.'").

Defendants also argue foremen did not consistently differentiate between regular wages and the Drive Time Rate and sometimes paid regular wages for travel as passengers. *See*, *e.g.*, Defendants' SoF, [ECF No. 143], ¶ 17. Defendants, though, do not cite any case law holding that the custom or practice exception does not apply when employees are compensated at two rates for an activity. Such a conclusion is inconsistent with common sense and the broad definition of "compensable." *See* 29 C.F.R. § 790.9 (noting that "compensable" includes compensation "in any amount"). *Pietrzycki*, 197 F. Supp. 3d at 1012. Even if HTS paid its employees at two different rates for the same activity, that does not mean that there was not a custom or practice to compensate employees for that activity.

As noted above, employees mostly traveled in HTS trucks but, on infrequent occasions, they traveled in personal vehicles. That means most Drive Time occurred in HTS trucks and some smaller portion of Drive Time occurred in personal vehicles. The record regarding HTS's custom or practice (though not, as explained above, its nonwritten contract) is different with respect to travel in these two types of vehicles.

Defendants never actually state, much less cite evidence showing, that HTS routinely failed to pay employees any compensation for traveling as passengers in an HTS truck. As noted above, Defendants rely on three paragraphs in their Local Rule 56.1(a) Statement when arguing no custom or practice existed.[12] Those paragraphs, however, do not contain assertions related to a failure to compensate employees in any amount. More importantly, the Court has reviewed all of the deposition testimony cited in the three paragraphs. At no point did any deponent testify that HTS did not provide any compensation to employees for traveling as passengers in an HTS

---

[12] One of the paragraphs does not address the custom or practice issue. Defendants' SoF, [ECF No. 143], ¶ 19. Another focuses on the failure to distinguish between regular wages and the Drive Time Rate, which is not material for the reasons already explained. *Id.* ¶ 17. In the final one, Defendants simply assert foremen did not have a uniform custom or practice of filling out DARs, without identifying any specific variation. *Id.* ¶ 20.

truck. To the contrary, every deponent's testimony supports Plaintiffs' position that HTS routinely paid either the Drive Time Rate or the regular wage rate for that activity. Therefore, in the Court's view, the material facts are undisputed and show that HTS had a custom or practice of compensating employees for traveling as passengers in an HTS truck.

With respect to a custom or practice of compensating for traveling as passengers in a personal vehicle, the analysis may be different. Defendants have identified evidence in the record that employees sometimes were compensated for time spent traveling as passengers in a personal vehicle and sometimes were not. This evidence creates an issue of fact as to whether HTS had a custom or practice of compensating employees for traveling as passengers in a personal vehicle. Because travel in a personal vehicle is a different activity than travel in an HTS truck, the issue of fact does not affect whether HTS had a custom or practice of compensating employees for Drive Time in an HTS truck. *See* 29 C.F.R. § 790.10(e) ("'The custom or practice' by which compensability of an activity is tested under the statute is one 'covering such activity.'"). It also does not affect the Court's conclusion as to the nature of HTS's nonwritten contract with its employees, even if HTS did not always comply with that contract.

To sum up, HTS had a nonwritten contract with employees to compensate them for the activity of traveling as passengers in a vehicle regardless of whether it was an HTS truck or a personal vehicle. HTS also had a custom or practice of compensating employees for traveling as passengers in an HTS truck. It remains an open question whether HTS had a custom or practice of compensating employees for traveling as passengers in a personal vehicle, but that issue is not material in light of HTS's nonwritten contract. Therefore, if Plaintiffs can prove that Defendants violated the FLSA, then the PPA will not shield Defendants from liability on their hours worked

40

or regular rate claims.[13]  Accordingly, Defendants have not shown they are entitled to judgment as a matter of law based on the PPA given the undisputed facts in the present record.

### D.  Defendants' Knowledge

Defendants argue they are entitled to summary judgment because they did not know Plaintiffs were performing work for which they were not paid sufficient overtime compensation. "[A]n employee must prove that he was 'employed' during the time for which he seeks overtime compensation, which requires a showing that the employer had either actual or constructive knowledge that he was working overtime."  *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009); *see also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 875 (6th Cir. 2012); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008).  "An employer has constructive knowledge of an employee's work if it should have acquired knowledge of that work through reasonable diligence."  *Allen v. City of Chicago*, 865 F.3d at 938.  Under the FLSA, an employer has an obligation "to exercise its control and see that the work is not performed if it does not want it to be performed."  *Kellar*, 664 F.3d at 177 (quoting 29 C.F.R. § 785.13).  An employer, though, is not required "to pay for work it did not know about, and had no reason to know about."  *Id.*

Defendants contend they did not have actual or constructive knowledge.  Defendants repeatedly assert they did not believe they were doing anything wrong or failing to pay Plaintiffs for work that they performed.  Defendants, though, do not cite any case law holding that an IMWL or FLSA claim requires specific intent to underpay employees, thereby violating the law. *See Cabrera v. B & H National Place, Inc.*, 2015 WL 9269335, at *2 (D.D.C. Sept. 28, 2015)

---

[13] The Court's § 254(b) analysis distinguishes the present case from many of those relied upon by Defendants.  *See, e.g.*, *Integrity Staffing*, 135 S. Ct. 513; *Chambers*, 428 F. App'x 400; *Rutti v. Lojack Corp.*, 596 F.3d 1046 (9th Cir. 2010); *Burton*, 181 F. App'x 829; *Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994); *Irwin v. State of Wis.*, 998 F.2d 1016 (7th Cir. 1993); *Brand v. Comcast Corp.*, 135 F. Supp. 3d 713 (N.D. Ill. 2015).

("An employee therefore need not, as Defendants argue, allege facts supporting a 'willful' violation to successfully plead an FLSA claim."). To the extent Defendants are arguing that they did not know, as a factual matter, what was happening during Drive Time, they have not shown the undisputed facts support this position. Of course, the Court has not yet found Drive Time constitutes hours worked, so it seems to be somewhat premature to ask whether Defendants knew Drive Time involved work. Regardless, it seems quite clear that Defendants knew employees were traveling as passengers during Drive Time and that payments at the Drive Time rate were not included when calculating employees' regular rates. Whether Defendants knew about more detailed matters, such as if and when employees performed additional activities during Drive Time, is not addressed by either party's briefs or Local Rule 56.1 Statements. Therefore, Defendants' lack of specific knowledge argument does not entitle them to judgment as a matter of law based on the undisputed facts.

For all of these reasons, Plaintiffs' and Defendants' motions for summary judgment are denied.

### E. Defendant Motter's Individual Liability

Plaintiffs seek to hold Motter jointly and severally liable with HTS as their "employer." Although the Court is denying both parties' motions for summary judgment, the facts relevant to a determination of whether Motter was Plaintiffs' "employer" are not disputed. "The FLSA contemplates several simultaneous employers who may be responsible for compliance with the FLSA." *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 784 (N.D. Ill. 2011). An individual may be liable under the FLSA when he is an "employer" and was responsible in whole or in part for the statutory violation. *In Kyu Kim v. Korean News of Chicago, Inc.*, 2017 WL 3034671, at *3 (N.D. Ill. July 18, 2017); *Schneider v. Cornerstone Pints, Inc.*, 2015 WL 12834755, at *1

(N.D. Ill. May 6, 2015), *supplemented*, 2016 WL 278813 (N.D. Ill. Jan. 15, 2016); *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 823 (N.D. Ill. 2011); *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 785 (N.D. Ill. 2011).

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In evaluating whether an individual is an employer, courts avoid overly "formalistic labels or common law concepts of agency." *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)). Instead, "[c]ourts assess the 'economic reality' of the working relationship." *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1075 (N.D. Ill. 2014). No single factor is dispositive. *Cardenas v. Grozdic*, 67 F. Supp. 3d 917, 923 (N.D. Ill. 2014).

The economic reality assessment encompasses a variety of factors, including "whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015) (quoting *Nehmelman v. Penn Nat. Gaming, Inc.*, 790 F.Supp.2d 787, 795 (N.D. Ill. 2011)) (internal quotation marks omitted). The individual liability analysis under the IMLW is materially the same for the purposes of the present case, and no party argues otherwise. *See Cho v. Maru Rest., Inc.*, 194 F. Supp. 3d 700, 704 (N.D. Ill. 2016); *Ortega v. Due Fratelli, Inc.*, 2015 WL 7731863, at *5 (N.D. Ill. Dec. 1, 2015).

In *Solis v. International Detective & Protective Services, Limited*, the court analyzed whether two individual defendants, a father and a son, were individually liable for the FLSA violations committed by a corporate defendant who employed the plaintiffs. 819 F. Supp. 2d

740, 743 (N.D. Ill. 2011). The father controlled the operations of the corporation as its sole owner and president, and was responsible for payroll, accounting, and invoicing. *Id.* The son, who was the COO, managed the employees on a daily basis, overseeing work assignments, scheduling, hiring, firing, and pay. *Id.* The Court explained that, typically, "a corporate officer with operational control of a corporation's covered enterprise is . . . jointly and severally liable under the FLSA." *Id.* at 748; *see also id.* ("Corporate officers with significant ownership interests, day-to-day control of operations, and involvement in the supervision and payment of employees can be personally liable for the corporation's failure to pay owed wages."). The court ultimately held both father and son liable for the FLSA violations because of their leadership positions and their oversight roles in matters related to pay and employment practices. *Id.* at 749.

This case is similarly clear cut. Defendants concede that Motter is Plaintiffs' "employer" within the meaning of the IMWL and the FLSA. Plaintiffs' SoF, [ECF No. 134], ¶ 2. Defendants do not explain why this concession alone, coupled with Motter's undisputed involvement in the creation of the Drive Time arrangement, is not dispositive. Motter is the sole owner of HTS, as well as its president. He is involved in HTS's day-to-day operations, supervises and directs employees' work, and has the authority to hire and fire. *Id.* Motter was involved in setting the compensation rates for employees. *Id.* ¶ 3. He specifically was involved in crafting the Drive Time arrangement. *Id.*; *see also* Motter's Dep., [ECF No. 134-2], at 9, 15–16. Therefore, Motter will be jointly and severally liable with HTS to the extent HTS is liable.[14]

---

[14] The parties disagree about whether Plaintiffs would be entitled to liquidated damages under the FLSA if Plaintiffs prove Defendants violated the statute. Because the Court has not yet found Defendants violated the FLSA and because the parties dispute the facts relevant to the liquidated damages analysis, the Court will not now decide that issue.

### 2. Defendants' Motion to Decertify

Defendants have moved to decertify the Rule 23 class action and the FLSA collective action. Defendants' argument that this case is not susceptible to classwide treatment seems to be at least somewhat in tension with the fact that they have moved for summary judgment on a classwide basis. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1061 (7th Cir. 2016). Moreover, as already noted, the Court denied a motion to decertify the collective action and certified a Rule 23 class action just last year. *Pietrzycki*, 197 F. Supp. 3d 1007. Defendants only identify one new basis for decertification that was not raised in last year's motion practice. Defendants contend the deposition testimony of several foremen, who were deposed after the Court's previous ruling, shows there was no custom or practice of compensating employees for Drive Time. As explained above, the Court largely disagrees with Defendants' assessment of the custom or practice issue, even in light of this new testimony, or at least with Defendants' proposition that all the facts are undisputed on that issue.

Outside of that testimony, Defendants more fully develop and support the arguments that they asserted during last year's motion practice. In particular, Defendants' attempt to make a more fulsome showing that individualized issues concerning how foremen awarded the Drive Time Rate will predominate over common issues because HTS did not have a custom or practice of compensating for Drive Time, enabling Defendants, therefore to take advantage of the PPA's protection from liability. As explained above, the Court disagrees with Defendants to the extent they contend HTS did not have a custom, practice, or contract to compensate employees for the activity of traveling as passengers in a vehicle. Whether HTS had a custom or practice of compensating for travel as passengers in a personal vehicle remains an open question. But the answer to that question is not determinative for the reasons discussed above. Based on the

arguments asserted by Plaintiffs at summary judgment, Drive Time potentially may be hours worked if it is more than ordinary home-to-work commuting.  At this time, therefore, the question with respect to personal vehicles is not a basis upon which to decertify the class.  For the reasons explained in its prior ruling, *id.*, and above, the Court denies Defendants' Motion to Decertify [ECF No. 140].

## IV. CONCLUSION

For all of the reasons stated above, Plaintiffs' Motion for Summary Judgment [ECF No. 132] is denied, Defendants' Motion for Summary Judgment [ECF No. 142] is denied, and Defendants' Motion to Decertify [ECF No. 140] is denied.


_____
Jeffrey T. Gilbert
United States Magistrate Judge


Dated: November 29, 2017