### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JASON PIETRZYCKI, on behalf of himself and all other plaintiffs similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 14-06546 |
| HEIGHTS TOWER SERVICE, INC., and MARK MOTTER | ) ) ) ) | |
| Defendants. | ) | |

### MOTION FOR PRELIMINARY
### APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Jason Pietrzycki ("Plaintiff"), on behalf of himself and all other similarly situated, for his Motion for Preliminary Approval of Class Action Settlement states as follows:

### I.    INTRODUCTION

Plaintiff seeks preliminary approval of the Class Action Settlement Agreement which will resolve the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1 claims of 51 people against Heights Tower Service, Inc. ("HTS") and Mark Motter (collectively, "Defendants"). In addition, the Class Action Settlement Agreement resolves the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, claims of 13 individuals.

For the reasons below, Plaintiff requests this Court enter an order, in the form attached hereto as Exhibit E to the Settlement Agreement attached as Exhibit 1 and also attached hereto as Exhibit 2, that (1) grants preliminary approval of the Proposed Class Action Settlement; (2) approves the proposed notice program; (3) sets a date for Final Approval of Hearing; and (4) sets

a date for submission of the final approval of papers as set forth in the attached Preliminary Approval Order. (Exhibit E to Exhibit 1). In support of this motion, Plaintiff states as follows:

## II.   OVERVIEW OF CLAIMS

This Court is very familiar with the issues in this case as it has presided over motions for class and collective certification, decertification, cross-motions for summary judgment, and a settlement conference wherein the Court was able to meet with the parties.

In a nutshell, HTS utilized an overtime calculation for all employees that allegedly did not properly calculate the employee's overtime rate. First, by not including Drive Time compensation, Defendants failed to include all remuneration when calculating the "regular rate" of pay for overtime purposes. Second, Defendants improperly exclude Drive Time hours from overtime when determining the total number of hours worked because Defendants maintain a custom, practice, and contract of compensating for Drive Time.

From a factual perspective, the Plaintiff and Class are paid for Drive Time – time spent riding in a vehicle as a passenger – at a reduced hourly rate of $10 per hour. HTS started the Drive Time policy in approximately 2012 to compensate the longer distances of travel. The Drive Time rate is a reduced hourly rate from the typical rate received (i.e., that time spent working on towers or time spent driving, rather than riding as a passenger).

## III.   SUMMARY OF SETTLEMENT TERMS

A copy of the Parties' Settlement Agreement is attached as Exhibit 1. For purposes of preliminary approval, the following paragraphs summarize the Settlement Agreement's key terms:

The Collective and Class shall receive a total of $121,567.13. Each member of the Collective and Class will receive a 100% recovery of their base wages. Additionally, each member

of the Collective will receive 100% recovery of any liquidated damages. Plaintiff Jason Pietrzycki will receive a $7,500 service award. The payments will be made in two installments: Class Counsel will mail out the Plaintiffs' first round of payments after final approval and the second set of payments in 2019.[1] The payment schedule is listed on Exhibit C of Exhibit 1.

This will not be a "claims made" settlement. The settlement proceeds will be paid directly to eligible Class and Collective Members.

The amounts were determined by using Defendants' payroll and timekeeping records to determine how many hours per week each Collective member worked and how many "drive time" hours they logged. Where the regular and "drive time" hours exceeded 40 in a work week, the overtime rate was calculated by multiplying the regular hours by the employee's usual rate and the "drive time" hours by the drive time rate and then dividing by the total combined hours. This "regular rate" was then multiplied by the first 40 hours worked and then the remaining hours were multiplied by one and one-half times the "regular rate." These numbers were then added, and additional compensation such as bonuses and per diem were added, and the total wages due were determined. The total wages due were then subtracted by the amounts previously paid. Any amounts left due were doubled for liquidated damages, and those numbers are reflected on Exhibit A to the Settlement Agreement.

To assure notice to the Class, Plaintiff's Counsel will send out the Notice to all Class Members via First Class Mail to the address of Record used by HTS or such other more recent address that is known for them.

---

[1] Those receiving less than $500 will be paid in full in the first installment.

Settlement Payments shall be paid by Defendants to Class Members who do not timely opt- out by no later than 14 days after final approval of the Settlement Agreement. If any checks are returned for any reason, and the parties do not locate a better address, their check shall be voided 180 days after it is sent. 15 days after checks become void, Defendants shall prepare a replacement check to the Illinois Treasurer, Unclaimed Property Division to be held by the Treasurer until claimed.

Class Counsel will apply to the Court for an award attorneys' fees and costs at the time of the filing of the Final Approval papers. The Defendants have agreed to pay attorneys' fees and costs of $211,432.87, with the first half of $105,716.43 paid shortly after final approval and the second half of $105,716.44 paid in a year. Said amount shall be in addition to, not subtracted from, Settlement Payments to Class Members.

## IV.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.     Class Action Settlement Approval Process

Approval of class action settlements is typically a three-step process:

(1) preliminary approval of the settlement at an informal hearing;

(2) dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34.

This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its role as the guardian of class interests. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22, *et seq.* With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement.

The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.,* § 11.25 at 11-36, 11-37. The decision to preliminarily approve a proposed settlement is in the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985 ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). If so, the court should grant preliminary approval of the settlement, authorize the Parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

**B. The Criteria For Preliminary Settlement Approval Are Satisfied**

Ultimately, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). At the preliminary approval stage, however, a

court's task is to determine whether class settlement is within the range of possible approval. *American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996).

Further, a court must not focus on an individual component of the compromise, but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). The Settlement Agreement here meets these criteria and clearly falls "within the range of possible approval." *Cook,* 1997 U.S. Dist. LEXIS 1090, at *24-25 (citation omitted).

1. **Strength of Plaintiff's Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment**

A key consideration in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to preliminarily approve a settlement, a district court must focus on the general principles of fairness and

reasonableness, but not on the substantive law governing the plaintiffs' claims. *Id.* A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate"). Plaintiffs believe that this case is an excellent result for Class Members as they are getting 100% of their base wages.

While the Plaintiffs felt confident in their claims, this Court's ruling on the cross motions for summary judgment showed that the Court did not think the issues were as black and white as Plaintiffs had hoped. And, the Court's ruling raised the prospect that Plaintiffs might not prevail (or, if they prevail, the recovery might be limited to only a lesser amount of damages than was hoped).

**2. Complexity, Length, and Expense of Further Litigation**

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendant would continue to vigorously defend the case. As trial is eminent, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would potentially result in further dispositive motions, and the possibility of appeals. This is particularly true given the unique facts presented by this case. Additional litigation would increase expenses and would not reduce the risks of litigation to the Settlement Class. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *see also Great Neck Capital*, 212 F.R.D.

at 409-10. Accordingly, the remaining burden, expenses, and risks for the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474–75 (S.D.N.Y. 2013).

**3.      At This Preliminary Stage, There is No Opposition to the Settlement**

The Plaintiff supports the settlement, as do Class Counsel and Defendants. At this preliminary stage, Class Counsel is unaware of any opposition to the settlement.

**4.      Opinion of Counsel**

Class Counsel is experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Class Counsel's opinion, the Settlement is fair, reasonable and adequate. It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel.  Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims, the value of the claims and the time costs, as well as the expense of trials and appeals. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1020; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). "[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment

8

of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted).

**5.     The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion.**

The Settlement was the result of adversarial, arm's length negotiations. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996). The Court should therefore find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

**V.     THE PARTIES' PROPOSED NOTICE PROGRAM**

The notice protocol identified in the Settlement Agreement provides proper notice to affected individuals. "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–

12 (1985). The Parties' proposed notice procedure of sending out notice to all Class Members meets the requirements of Rule 23.

## VI.    SCHEDULING OF A FINAL APPROVAL HEARING IS APPROPRIATE

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e). The Parties request that the Court set a date for a hearing on final approval.

## VII.    ATTORNEY FEES

The attorney fees represent a significant discount in the attorneys' fees incurred to date and those which will be incurred before and after he final fairness hearing. Furthermore, Class Counsel is responsible for administering the notice and sending out class payments.  And, because the payments are being made over a year, this exercise must be repeated again in 2019.

Class Counsel will apply to the Court for an award attorneys' fees and costs at the time of the filing of the Final Approval papers.  Under Section VI of the Settlement Agreement, Class Counsel will petition the Court for the sum total of $211,432.87 for all attorneys' fees and reimbursement for litigation expenses actually incurred, and Defendants will not object to or oppose these requests.  Said amount shall be in addition to, not subtracted from, Settlement Payments to Collective and Class Members.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff prays for an order (in the form attached hereto as Exhibit 2):

.       (i)      Granting preliminary approval of the Settlement in this matter;
.       (ii)     Certifying the proposed Class;

.      (iii)   Approving the form and content of the Notice to be sent to Class Members;
       (iv)    Appointing Named Plaintiff, Jason Pietrzycki, as Class Representative;
.      (v)     Approving the appointment of Class Counsel;
.      (vi)    Scheduling a final fairness hearing;
.      (vii)   Approving the FLSA settlement; and
.      (viii)  Granting such other relief as the Court deems appropriate under the circumstances.


Dated: April 3, 2018                    Respectfully Submitted,
                                        **JASON PIETRZYCKI, on behalf of himself and
                                        all other plaintiffs similarly situated,**


                                        By:   _____/s/ David Fish_____
                                                One of Plaintiff's Attorneys

David Fish
Kimberly Hilton
John Kunze
The Fish Law Firm, P.C.
200 E 5th Ave Suite 123
Naperville, IL 60563
T: 630-355-7590
F: 630-778-0400