**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JASON PIETRZYCKI, on behalf of himself and all other plaintiffs similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 14-06546 |
| HEIGHTS TOWER SERVICE, INC., and MARK MOTTER | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
AND FOR AN AWARD OF ATTORNEY FEES AND COSTS**

Plaintiff Jason Pietrzycki ("Plaintiff"), on behalf of himself and all others similarly situated, for his Unopposed Motion for Approval of Class Action Settlement and for an Award of Attorney Fees and Costs, states as follows:

**I.     INTRODUCTION**

Plaintiff seeks final approval of the Class Action Settlement Agreement, which will resolve the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1 *et seq,* claims of 51 people against Defendants Heights Tower Service, Inc. ("HTS") and Mark Motter ("Motter," and together with HTS, "Defendants"). No objections were raised to the Class Action Settlement.  For the reasons stated below, Plaintiff requests that the Court grant final approval of the Parties' Class Action Settlement Agreement (Ex. 1) and enter the proposed order attached as **Exhibit 5**.

1

II.     **THE LITIGATION**

The Parties' Class Action Settlement Agreement[1] resolves the pending litigation against Defendants.  The following is an abbreviated summary of the litigation.

This Court is very familiar with the issues in this case as it has presided over motions for class and collective certification, decertification, cross motions for summary judgment, and an extended settlement conference wherein the court was able to meet with the parties.

In a nutshell, HTS utilized an overtime calculation for all employees that did not properly calculate the employee's overtime rate. First, by not including Drive Time compensation, Defendants failed to include all remuneration when calculating the "regular rate" of pay for overtime purposes.  Second, Defendants improperly exclude Drive Time hours from overtime when determining the total number of hours worked because Defendants maintain a custom, practice, and contract of compensating for Drive Time.

The Plaintiff and Class are paid for Drive Time – time spent riding in a vehicle as a passenger – at a reduced hourly rate of $10 per hour.  HTS started the Drive Time policy in approximately 2012 to compensate the longer distances of travel.  The Drive Time rate is a reduced hourly rate from the typical rate received (i.e., that time spent working on towers or time spent driving, rather than riding as a passenger).

III.    **SUMMARY OF SETTLEMENT TERMS & PRELIMINARY APPROVAL ORDER**

A copy of the Parties' Settlement Agreement is attached hereto as Exhibit 1.  On April 10, 2018, the Court granted preliminary approval of the Parties' Settlement Agreement.  (Dkt. #173) ("Preliminary Approval Order").   The following paragraphs summarize the Settlement Agreement's key terms and results since the Preliminary Approval Order was entered.

---

[1] Capitalized terms are defined terms in the Settlement Agreement.

2

The total amount of the settlement to Class Members who have not opted-out and Collective Members is $121,576.13. Each member of the Collective and Class will receive 100% of their base wages. Additionally, each member of the Collective will receive 100% of any liquidated damages. Plaintiff Jason Pietrzycki will receive a $7,500 service award. The payments will be made in two installments: Class Counsel will mail out the Plaintiffs' first round of payments after final approval and the second set of payments in 2019. The payment schedule is listed on Exhibit C of the Settlement Agreement (Ex. 1).

This is not a "claims made" settlement. The settlement proceeds will be paid directly to eligible Class and Collective Members.

The amounts were determined by using Defendants' payroll and timekeeping records to determine how many hours per week each Collective or Class member worked and how many "drive time" hours they logged. Where the regular and "drive time" hours exceeded 40 in a work week, the overtime rate was calculated by multiplying the regular hours by the employee's usual rate and the "drive time" hours by the drive time rate and then dividing by the total combined hours. This "regular rate" was then multiplied by the first 40 hours worked and then the remaining hours were multiplied by one and one-half times the "regular rate." These numbers were then added, and additional compensation such as bonuses and per diem were added, and the total wages due were determined. The total wages due were then subtracted by the amounts previously paid. Any amounts left due were doubled for liquidated damages for Collective Members only. The numbers for the Collective Members are reflected on Exhibit A to the Settlement Agreement, and the numbers for the Class Members are reflected on Exhibit B to the Settlement Agreement. (Ex. 1).

Pursuant to the Preliminary Approval Order, the approved Settlement Notices were timely mailed by Class Counsel. On April 24, 2018, Class Counsel mailed to each Class Member the Class Notice via first class U.S. mail, postage pre-paid, to each Class Member's last-known physical address as reflected in Defendants' records, which were earlier provided to Class Counsel during the Litigation.

No Class Member indicated that he wished to oppose or contest the approval of the Agreement, the judgment to be entered thereon if the same is approved, or the attorney's fees, costs, and expenses requested by Class Counsel. The time for the same now having passed, if the Agreement is approved, all Class Members shall be deemed to have waived such objection and shall be foreclosed from making any objections to the fairness, adequacy, or reasonableness of the proposed settlement, or the application for attorneys' fees, costs, and expenses to Class Counsel.

The first installment of the Settlement Payments shall be delivered by Defendants to Class Counsel no later than June 28, 2018. Class Counsel will mail those checks to the Class and Collective Members no later than July 20, 2018. The second installment of Settlement Payments shall be delivered by Defendants to Class Counsel no later than April 9, 2019. Class Counsel will mail those checks to Class and Collective Members no later than April 23, 2019. If any checks are returned for any reason, and the parties do not locate a better address, the check shall be voided 180 days after it is sent (January 2, 2019 for the first installment and October 7, 2019 for the second installment). 15 days after checks become void (February 15, 2019 for the first installment and November 5, 2019 for the second installment), Defendants shall prepare a replacement check to the Illinois Treasurer, Unclaimed Property Division to be held by the Treasurer until claimed.

By this Motion, Class Counsel is also applying to the Court for an award of attorneys' fees and costs. The Defendants have agreed to pay attorneys' fees and costs of $211,432.87.

Defendants have agreed to pay the fees and costs in two equal installments on the same payment schedule outlined above. Said amount shall be in addition to, not subtracted from, the Settlement Payments to the Class and Collective Members.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL

### A. Class Action Settlement Approval Process

Approval of class action settlements is typically a three-step process:

(1) preliminary approval of the settlement at an informal hearing;

(2) dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its role as the guardian of class interests. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22, *et seq.* At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. With this motion, the Parties request that the Court take the last step in the settlement approval process by granting final approval of the Settlement.

### B. The Parties Have Satisfied the Requirements of Rule 23 and the Court's Notice Procedures Set Forth in the Preliminary Approval Order

In the Preliminary Approval Order, the Court determined that the form and content of the Class Notice was appropriate under Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States and any other applicable laws. (Dkt. # 173, ¶3).

As to the distribution of notice, in the Preliminary Approval Order, the Court ordered that notice be effectuated as called for in the Agreement, specifically by first-class mail. (*Id.* at ¶ 4). Rule 23(c)(2)(B) requires the Court to direct the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As the Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175.

Class Counsel in fact mailed to each Class Member the Class Notice via first class U.S. mail, postage pre-paid, to each Class Member's last-known physical address, as reflected in Defendant's records, which were earlier provided to Class Counsel during the Litigation. The Parties' efforts to effectuate notice to the Class meet the requirements of Rule 23(c)(2)(B).

### C. Final Approval is Appropriate Pursuant to Rule 23(E) Because the Settlement is Fair, Adequate, and Reasonable

Ultimately, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise, but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement

is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). For the following reasons, the class action settlement is fair, adequate, and reasonable, and not a product of collusion and therefore should be finally approved.

### 1. Strength of Plaintiffs' Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment

A key consideration in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendants' offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985). A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

Plaintiffs believe that this case is an excellent result for Class Members because the Settlement Payments equal 100% of the base wages they could hope to recover at trial and eliminates the risk that they could recover a lower amount or nothing at all. While the Plaintiffs felt confident in their claims, this Court's ruling on the cross motions for summary judgment showed that the Court did not think the issues were as black and white as Plaintiffs had hoped. And, the Court's ruling raised the prospect that Plaintiffs might not prevail (or, if they prevail, the recovery might be limited to only a lesser amount of damages than was hoped).

### 2.      Complexity, Length, and Expense of Further Litigation

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000).  Absent settlement, Defendants would continue to vigorously defend the case.  As trial is eminent, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would potentially result in further dispositive motions, and the possibility of appeals. This is particularly true given the unique facts presented by this case.  Additional litigation would increase expenses and would not reduce the risks of litigation to the Settlement Class.  *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *see also Great Neck Capital,* 212 F.R.D. at 409-10.  Accordingly, the remaining burden, expenses, and risks for the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense.  "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."  *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 474–75 (S.D.N.Y. 2013).

### 3.      There is No Opposition to the Settlement

The Plaintiff supports the settlement, as do Class Counsel and Defendants.  Moreover, Class Counsel is not aware of any opposition to the settlement.

### 4.      Opinion of Counsel

Class Counsel is experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement.  In Class Counsel's opinion, the Settlement is fair, reasonable and adequate. It is

appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Class Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims and value of the claims and the time costs, as well as the expense of trials and appeals. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1020; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). "[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted); *Grove v. Principal Mutual Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001).

### 5. The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion

The Settlement was the result of adversarial, arm's length negotiations. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996). The Court should therefore find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

9

## V.    **ATTORNEY FEES**

Class Counsel's sustained efforts over the past almost four years have produced a settlement whereby members of the Class and Collective will receive an excellent settlement. As compensation for this result, Class Counsel requests that the Court award reasonable attorney fees and costs in the amount of $211,432.87.   None of this amount will come out of the Class or Collective recovery; it is paid over and above the Class and Collective recovery.   The Defendant does not oppose this request and no class member has objected to this payment.   As set forth below, the reimbursement for fees is a significant reduction in Class Counsel's Lodestar.   Class Counsel's current lodestar is approximately $292,443.50 plus $3,878,87 in expenses.   (Ex. 2, Invoice; Ex. 3, Fish Affidavit, ¶12)   And, a significant amount of work is yet to be done.   Class Counsel has assumed the duties of administering the settlement.   However, as Class Counsel capped fees at $211,432.87, they will not seek in excess of that amount.   Under the terms of the Settlement Agreement, Class Counsel will not receive all the fees in a single payment.   Class Counsel will receive the first installment of $105,716.43 in 2018 and the second installment of $105,716.44 in 2019.

## A.    CLASS COUNSEL DEVELOPED AND SUCCESSFULLY PROSECUTED UNCERTAIN LITIGATION.

As the Court is well aware, this matter has been pending for several years and has been heavily contested.   This Court has presided over motions for class and collective certification, decertification, cross-motions for summary judgment, and a settlement conference (and the court refused to hold a settlement conference several years ago, finding that that parties were too far apart to resolve the case).   There were many depositions taken in this case that turned out to be instrumental as they were relied upon for the class certification and summary judgment briefing.

Furthermore, HTS did not have very concise payroll records so this made computing damages more cumbersome than usual.

This also was not a cookie-cutter overtime case; there was not a lot of case law addressing the custom, practice and contract theories that were at issue here. Plaintiff hopes that this case will serve as an important catalyst for making sure that those in the tower industry are being paid fairly for their drive time. For example, a trade journal reporting on this case noted that:

> **"The lawsuit is expected to be closely followed by many of the more than 1,200 industry service and installation contractors who may have the same policy that HTS follows."[2]**

Class Counsel also has a fair amount of work still to do. Under the terms of the Settlement Agreement, Class Counsel is responsible for administrating the distribution of all funds. There will be two separate distributions, so Class Counsel will incur additional costs in processing and distributing the funds to each Class and Collective member at least once and a majority of them twice. There typically is a significant amount of Class contact post-settlement as Class Members want to know when their checks are arriving, why their co-workers got more than them, etc.

**B.     THE FEES SOUGHT ARE REASONABLE:**

The FLSA and IMWL mandate that prevailing plaintiffs are entitled to receive reasonable attorneys' fees and costs. See 29 U.S.C. § 216(b) (the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action") (emphasis added); 820 ILCS 105/12(a).

Under *Hensley v. Eckerhart,* 461 U.S. 424 (1983), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the

---

[2]"Tower techs' overtime lawsuit puts travel time compensation under an industry microscope" http://wirelessestimator.com/articles/2017/tower-techs-overtime-lawsuit-puts-travel-time-compensation-under-an-industry-microscope/ (Last visited, April 9, 2018)

litigation multiplied by a reasonable hourly rate," often referred to as the "lodestar." 461 U.S. at 433; *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 550 (7th Cir. 1999); *Kurgan v. Chiro One Wellness Centers LLC*, 2015 WL 1850599 (N. D. Ill. April 15, 2015). "Congress included the nondiscretionary fee-shifting provision into the FLSA in order to entice competent attorneys to prosecute what are often low-dollar wage claims." *Id. Anderson v. AB Painting & Sandblasting Inc.,* 578 F.3d 542, 545 (7th Cir.2009) (noting that "Congress wants even small violations of certain laws to be checked through private litigation").

The reasonable hourly rate for an attorney is determined by looking at the rates charged to paying clients by other attorneys in the community with similar experience and skill. *Small v. Richard Wolf Medical Instruments Corp*., 264 F.3d 702, 707 (7th Cir. 2001); *Dominguez v. Quigley's Irish Pub, Inc*., 897 F. Supp. 2d 674, 683 (N.D. Ill. 2012). The court may presume that an attorney's actual billing rate for similar work is the market rate. *Id.* Where the attorney does not traditionally charge a billing rate, the attorney may submit affidavits of similarly situated attorneys to prove the market rate for his services. *Id.* The Laffey Matrix, an annual report prepared by the United States Attorney's Office to estimate reasonable attorneys' fees, may also be used to prove the reasonableness of the charged fee. *Berg v. Culhane,* 2011 WL 589631 at *3 (N.D. Ill. 2011).

The Fish Law Firm P.C.'s billing records are attached as Exhibit 2. David Fish represents clients on both an hourly-rate basis and a contingency basis. He has been a lawyer for nearly 20 years, has been a Chair of the DuPage County Labor and Employment Section, is on the Illinois Bar Association's Labor and Employment Section Council, and is a member of the National Employment Lawyers Association. For new hourly rate clients that were represented during the time this case was pending, he typically utilized an hourly rate of between $375 and $425 per hour.

(Ex. 3, Fish Affidavit, ¶9). Other professionals and staff include attorneys Kimberly Hilton, John Kunze, Buri Banerjee, Monica Fazekas, and Quinton Osborne and staff members Jennifer Crowe, Elizbeth Angileski and Nicole Sanders. Each attorney's and paralegal's hours and rates are broken down as follows:

| Lawyer/Paralegal | Years of Experience | Rate: | Hours Worked: | Total Fees: |
|---|---|---|---|---|
| Ela Angielski | 1.5 | $110.00 | .10 | $11.00 |
| Buri Banerjee, Attorney | 1 | $225.00 | 259.80 | $58,455.00 |
| Jennifer Crowe | 2 | $110.00 | 49.30 | $5,423.00 |
| Monica Fazekas, Attorney | 1 | $185.00 | 5.10 | $943.50 |
| David Fish, Attorney | 18 | $410.00 | 406.35 | $166,603.50 |
| Kimberly Hilton, Attorney | 7 | $325.00 | 170.40 | $55,380.00 |
| John Kunze, Attorney | 2 | $275.00 | 1.90 | $522.50 |
| Quinton Osborne, Attorney | 4 | $250.00 | 17.30 | $4,325.00 |
| Nicole Sanders | 30 | $110.00 | 5.20 | $780.00 |
| **Total:** | | | | **$292,443.50** |

As further evidence of the reasonableness of the fee award, Class Counsel has submitted the Declaration of Douglas Werman (Exhibit 4), one of the preeminent wage and hour lawyers in the country who has worked with David Fish. Mr. Werman has been legal counsel in more than 600 wage cases and has an hourly rate of between $600 and $650 per hour for work he has performed on wage matters. He has opined that the Fish Law Firm rates are "at, or below, the reasonable Chicago market" for lawyers of similar experience and that a $410 per hour rate for Fish and $325 per hour for Hilton are reasonable. (*Id.* at ¶17).

Finally, under the Laffey Matrix, Fish's reasonable hourly rate would be $717 per hour and Hilton's hourly rate would be $440 per hour and first year associates would be $359 per hour. (http://www.laffeymatrix.com/see.html) The Fish Law Firm's fees are significantly less than this.

**CONCLUSION**

For the foregoing reasons, the Court should grant final approval of the Settlement and enter the Parties' proposed final approval order.

Dated: May 25, 2018                    Respectfully Submitted,


                                       By:    /s/ David Fish            .
                                              One of Plaintiff's Attorneys


David Fish
Kimberly Hilton
The Fish Law Firm, P.C.
200 E. 5th Avenue, Suite 123
Naperville, IL 60563
(630) 355-7590
dfish@fishlawfirm.com
khilton@fishlawfirm.com